619 A.2d 311

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Ernest GOLDSMITH.**

Superior Court of Pennsylvania.

Argued July 29, 1992.

Filed Jan. 11, 1993.

Petition for Allowance of Appeal Denied
May 14, 1993.

Norman Gross, Asst. Dist. Atty., Philadelphia, for Com., appellant.

James A. Lammendola, Philadelphia, for appellee.

Before MONTEMURO, FORD ELLIOTT and CERCONE, JJ.

FORD ELLIOTT, Judge:

The Commonwealth brings the instant appeal following the suppression of a statement given by appellee. The suppression was obtained pursuant to a violation of Pennsylvania's six-hour arraignment rule.

The underlying factual situation is fairly simple and is generally uncontested by the parties. At approximately noon on April 20, 1991, Philadelphia police responded to a call summoning help to an apartment house at 4840 Oxford Avenue in northeast Philadelphia. At the apartment house, the police discovered a stabbing victim, Michael Jones, lying in a hallway with a wound to his chest. Jones showed no vital signs and was eventually pronounced dead. Police also encountered appellee, whose shirt was blood spattered and ripped. Appellee refused to respond to police questioning.

Another resident of the apartment building, Raleine Colbourne, told police that she, appellee, and the victim all lived together and that appellee and the victim had been fighting earlier in the day.

Appellee was arrested at 12:25 p.m. He arrived at the Police Administration Building at 1:50 p.m. and was placed in an interview room by 2:00 p.m. After taking biographical information, police gave appellee his *Miranda*[1] rights. At

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Typically, the defendant is told that he has the right to remain

3:15 p.m. police began taking a formal, written statement from appellee, concluding at 6:00 p.m. At approximately 7:00 p.m., after obtaining a search warrant, police took blood samples from appellee's shirt and hands and confiscated the shirt.

Shortly after 7:00 p.m., appellee volunteered to police that his prior statement had been false and that he now wished to make an accurate one. Before taking this statement, the police had appellee sign a form containing the following language:

### REQUEST TO EXTEND INTERROGATION TIME

I HAVE BEEN ADVISED OF MY RIGHTS BY, DETECTIVE *SANTIAGO*, OF THE HOMICIDE DIVISION. I HAVE ALSO BEEN INFORMED BY DETECTIVE *FISCHER AND DET. SANTIAGO* THAT AFTER I HAVE BEEN IN POLICE CUSTODY FOR SIX (6) HOURS, I DO NOT HAVE TO TALK WITH THE POLICE AND THAT EVERYTHING THAT I TELL THEM AFTER THIS SIX (6) HOURS CAN NOT BE USED AGAINST ME IN COURT, UNLESS I WAIVE MY RIGHTS AND WISH TO CONTINUE TALKING TO POLICE.

I HAVE READ THE ABOVE INFORMATION THAT DETECTIVE *FISCHER AND DET. SANTIAGO*, OF THE HOMICIDE DIVISION TOLD ME AND EVEN WITH WHAT I RECEIVED ABOVE, I WANT TO CONTINUE TO TALK WITH THE POLICE AND TELL THEM WHAT I KNOW. ALSO THAT ANYTHING THAT I KNOW AND THAT I SAY CAN AND WILL BE USED AGAINST ME IN COURT.

Appellee was read his *Miranda* rights again and proceeded with his second statement, initiating at 7:20 p.m. and finishing at 8:35 p.m. In this second statement, appellee inculpated

silent, that anything he says can and will be used against him in court, that he has the right to an attorney, and that if he cannot afford one, an attorney will be appointed for him.

himself in the murder of Michael Jones.[2]  Finally, at 8:48 p.m., appellee was arraigned.

At an ensuing suppression hearing, the court ruled that appellee's statement was subject to suppression as the Commonwealth had failed to arraign appellee within six hours of arrest in violation of the six-hour arraignment rule and that appellee's waiver of his rights under the rule was invalid.  For the reasons which follow, we agree with the suppression court and will affirm its order of December 23, 1991, granting appellee's motion to suppress.

In its appeal of the suppression court's order, the Commonwealth poses three questions:

1. Did the lower court erroneously suppress defendant's fully voluntary, *Mirandized* confession to murder, on the grounds that a suspect may not waive his rights under the *Duncan/Davenport* six-hour rule under any circumstances?

2. Did the lower court erroneously suppress defendant's voluntary, *Mirandized* confession to murder, on the alternative ground that a suspect may never waive his rights under the six-hour rule after the six-hour period has expired, where defendant demanded to speak to police shortly after the six-hour period had expired and then expressly waived his rights under the six-hour rule before confessing?

3. Did the lower court erroneously suppress defendant's voluntary, *Mirandized* confession to murder, on the alternative ground that defendant's waiver of rights was invalid because of a purported defect in the written waiver form, where the form accurately explained defendant's rights under the six-hour rule in plain and simple terms, defendant manifested every objective intention to waive his rights under the rule, and defendant never advised police nor testified at the suppression hearing

---

2.  Appellee also indicated in this statement that he had drunk at least a pint of vodka that day prior to his arrest.  The police testified consistently that appellee showed no signs of intoxication.

> that he did not understand the rule or the consequences of the waiver?

Commonwealth brief at 3. We now turn to our analysis of these issues.

■ We begin with our standard of review:

> ... where the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted....

*Commonwealth v. Robinson,* 518 Pa. 156, 159, 541 A.2d 1387, 1389 (1988), quoting *Commonwealth v. Hamlin,* 503 Pa. 210, 469 A.2d 137 (1983). The statement in question was suppressed pursuant to the six-hour arraignment rule imposed by our decisional law. Simply put, that rule, as currently interpreted, mandates that where the authorities fail to arraign an arrestee within six hours of arrest, then any statements made by the defendant after that six-hour period has expired must be suppressed. *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987).

The ancestry of the six-hour arraignment rule is commonly traced to *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). In *Futch,* our supreme court ruled that evidence obtained during an unnecessary delay between arrest and preliminary arraignment is inadmissible at trial if the obtaining of the evidence is causally related to the delay. This rule further evolved in *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974), which set out a three part test: 1) the delay must be unnecessary; 2) evidence that is prejudicial must be obtained; and 3) the incriminating evidence must be reasonably related to the delay.

The six-hour prophylactic rule was formulated by the supreme court in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977). In *Davenport,* the court applied the three-part *Williams* test and ruled that the statement of the defendant therein should be suppressed. However, apparently in recognition of the difficulty in applying the still somewhat

vague benchmarks of *Williams,* the court chose the *Davenport* opportunity to announce an easy to apply litmus test:

> In light of our experience since *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), we conclude that, pursuant to our supervisory power, we should adopt a rule under which the admissibility of any statement taken while the accused is in custody before preliminary arraignment is based on the length of the delay between arrest and arraignment. If the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial. . . .

> This rule will assure more certain and even-handed application of the prompt arraignment requirement, and will provide even greater guidance to trial courts, the bar and law enforcement authorities. Such a rule will simplify the task of determining the admissibility of statements taken before arraignment and thereby further judicial economy.

*Davenport,* 370 A.2d at 306.

The most recent pronouncement of our supreme court on the six-hour rule is *Commonwealth v. Duncan, supra.* In *Duncan,* the supreme court was asked to reassess the sometimes harsh effects of *Davenport* in a situation where the defendant, although not arraigned for *eight* hours after arrest, made the suppressed incriminating statement minutes after being taken into custody. The supreme court reversed the trial court and, while reaffirming the need and import of the six-hour rule, mitigated its effect to the extent that only statements made *after* six hours have passed are subject to suppression.

We are now faced with the question of whether the six-hour arraignment rule may be waived under the circumstances of this case.[3] We hold that once six hours have passed from

3. The Commonwealth's first issue listed under its Statement of the Questions Involved addresses whether the six-hour rule can ever be waived. However, we will limit our review to the factual setting presented; that is, where the waiver has been signed after six hours have elapsed.

the time of arrest and no arraignment has yet taken place, the six-hour arraignment rule may not be waived.

Initially, the Commonwealth would argue that the six-hour rule has no constitutional basis and that the trial court has unjustifiably elevated it to such a status:

> The lower court's analysis has elevated the judicially created, prophylactic six-hour rule, with its necessarily arbitrary standard, to a status never intended by the Supreme Court. By the lower court's reasoning, the six-hour rule is more exalted than a defendant's constitutional rights to remain silent or to the presence of counsel during custodial police interrogation, because unlike those constitutional rights, the six-hour rule can never be waived.
>
> The lower court's decision stands the hierarchy between constitutional and non-constitutional rights on its head.

Commonwealth's brief at 14–15.

█ However, it is our opinion that the six-hour arraignment rule does, indeed, serve constitutional ends. As both *Davenport* and *Duncan* have informed us, the six-hour arraignment rule is intended to serve two purposes. First, the rule promotes prompt arraignment. Pa.R.Crim.P. 140 delineates the several functions of a preliminary arraignment:

(a) At the preliminary arraignment, the issuing authority shall not question the defendant respecting the offense charged, but shall forthwith deliver a copy of the complaint to him. The issuing authority shall also inform the defendant:

(1) of his right to secure counsel of his choice and his right to assigned counsel in accordance with Rule 316;

(2) of his right to have a preliminary hearing; and

(3) if the offense is bailable, of the amount of bail demanded and the types acceptable as provided in these rules.

(b) If the defendant desires to post bail, secure counsel or notify others of his arrest, he shall be held but not be committed to jail until he has been given immediate and reasonable opportunity to do so.

(c) If bail is set, the issuing authority shall accept bail at any time prior to the return of the transcript to the court. . . .

Pa.R.Crim.P. 140. These functions of the preliminary arraignment clearly serve constitutional ends. As was stated in *Davenport* and quoted in *Duncan:*

> In *Davenport,* we stated that *the purpose of the prompt arraignment requirement is to insure that the accused is promptly afforded the full panoply of rights and protections guaranteed by our Constitution as embodied in Pa. R.Crim.P. 140.*
>
> > Rule 140 provides that the court shall inform the accused of the charges against him, his right to counsel, his right to bail and his right to a preliminary hearing. Thus, the requirement of a prompt arraignment serves to protect the accused's right to know 'the nature and cause of the accusation against him,' Pa. Const. art. I, § 9, his right to counsel, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); U.S. Const. Amends. VI, XIV; Pa. Const. art. I, § 9, and his right to reasonable bail. Pa. Const. art. I, § 14. It also protects the accused's right to be free from unreasonable seizure of his person. See *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); U.S. Const. amends. IV, XIV; Pa. Const. art. I, § 8.

*Duncan,* 525 A.2d at 1181 (emphasis added), quoting, in part, *Davenport.*

Second, the six-hour arraignment rule recognizes the inherently coercive nature of prolonged custodial police interrogation. In this regard, it affords protection similar to *Miranda,* in that the constitutional right not to be compelled to give evidence against oneself is served. U.S. Constitution, amendment V, Pennsylvania Constitution, article I, § 9.

This two-fold purpose of the rule is set out in *Duncan* as follows:

> A primary evil which prompted the development of the exclusionary rule was a recognition of the coercive environment that can be established by protracted custodial ques-

tioning. However, '[t]his rule was adopted not simply to guard against the coercive influence of custodial interrogation, but to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay.'

*Duncan*, 525 A.2d at 1181, quoting, in part, *Davenport*. Clearly, the Commonwealth cannot successfully assert that the underpinnings of the six-hour arraignment rule are not constitutional in scope.

The Commonwealth would argue in the alternative that the case law surrounding waivers of fifth and sixth amendment rights should apply within this context. However, even if we were to find that waiver is possible, we are compelled to find that the six-hour arraignment rule cannot be waived under the circumstances of this case: where the waiver was executed more than six hours after arrest or where the purported waiver is inadequate to inform appellant of the rights which he foregoes.

Typically, valid waivers of rights must be voluntary, knowing, and intelligent. *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Instantly, we find the standards of voluntariness and knowingness to be unmet. Moreover, we believe that once six hours have elapsed from the time of arrest, a waiver can never pass voluntariness muster.

The six-hour arraignment rule, in part, recognizes the inherently coercive nature of prolonged custodial questioning by the police. When our supreme court adopted the arbitrary [4] six-hour time limit, it effectively ruled that, at six hours, the coercive quality of police custody has endured so long that we must now regard it as having had the feared effect, that the accused has, indeed, been coerced, and that any utterance of the accused must also now be viewed as having been involuntary. In effect, the supreme court ruled that any statement of the accused given six hours past arrest is involuntary *per se*.

---

**4.** This word has an unfortunately pejorative sense and is somewhat inaccurate, as a glance at footnote 7 in *Davenport* will attest. *See Davenport*, 370 A.2d at 306, n. 7.

Therefore, any waiver of the six-hour arraignment rule given more than six hours beyond arrest is involuntary *per se* and is invalid. The Commonwealth points to the spontaneous and unsolicited "volunteering" of appellee's statement approximately six and one-half hours after his arrest. However, the supreme court has not, as yet, permitted an inquiry into the non-coercive nature of the statement once the six-hour rule has been violated.

Furthermore, given the language of the form waiver employed instantly, we cannot say that appellee's waiver was knowing. The form employed does not begin to inform appellee of his right to be promptly arraigned. The waiver failed to advise appellee of the nature of the charges against him. It failed to alert him to his right to secure or be assigned counsel. It failed to alert him of his right to a preliminary hearing or to his right to bail. In short, the "waiver" form executed by appellee merely informed him that he did not have to make any statement after six hours in custody and that any such statement could not be used against him without his waiver. However, nowhere is appellant apprised about why this is so.

For these reasons we find that the six-hour arraignment rule may not be waived after the passage of six hours from the time of arrest. Moreover, the waiver form employed instantly was inadequate.

Lastly, we note that counsel for appellee has petitioned the court to be permitted to withdraw as counsel and to be permitted to file a petition for attorney's fees. The Commonwealth has opposed this petition to withdraw. We believe counsel for appellee states a valid reason for withdrawal. Appellee filed a complaint against counsel with our supreme court's Disciplinary Board. It is difficult to envision counsel being able to continue providing effective assistance following this obvious breakdown in the attorney-client relationship. Moreover, the basis for the Commonwealth's concern in this regard appears to be a desire to see the current appeal resolved prior to withdrawal in order that the matter need not be rebriefed and reargued. Since we have now resolved the

instant issues on their merits, we see no reason not to grant the motion for permission to withdraw.

Accordingly, the order of the suppression court entered December 23, 1991, is hereby affirmed. Petition for James A. Lammendola to withdraw as counsel for appellee is hereby granted. Petition for permission to file an attorney fee petition is granted. Counsel's request to dismiss the Commonwealth's Opposition to the Petition to Withdraw as Counsel is denied as moot. Jurisdiction relinquished.

This decision was reached after the appointment of Justice Montemuro to the supreme court.