COMMONWEALTH of Pennsylvania,
Appellee,

v.

John PEREZ, Appellant.

Superior Court of Pennsylvania.

Submitted March 13, 2000.

Filed Sept. 26, 2000.

John Packel, Public Defender, Philadelphia, for appellant.

Catherine L. Marshall, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: JOHNSON, TODD and HESTER, JJ.

TODD, J.:

¶ 1 John Perez appeals the Judgment of Sentence entered by the Philadelphia County Court of Common Pleas on April 24, 1998.[1] Following a jury trial, Perez was convicted of three counts of robbery[2] and other related offenses[3] and was sentenced to eight to twenty years in prison. On appeal, Perez argues that the trial court, by the Honorable Judge Edward J. Bradley, erred in denying his motion to suppress statements that he made to police on the basis that the statements were not obtained within six hours of his arrest.[4] For the reasons set forth below, we affirm the trial court's judgment of sentence.

¶ 2 In reviewing a trial court's denial of a motion to suppress, this Court must determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings.[5] *Commonwealth v. Brundidge*, 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993). In making this determination, we must consider the Commonwealth's evidence and so much of the evidence of Perez as remains uncontradicted when fairly read in the context of the record as a whole. *Id.*

¶ 3 The record supports the following recitation of facts. At approximately 4:30 p.m. on November 24, 1996, Griffin's Deli in Philadelphia was robbed at gunpoint by three men. Based on information provided by the victims and a videotape of the robbery, police circulated a description of the suspects. The police also obtained a description of the car in which the suspects were seen fleeing, a lime green Chevy Monte Carlo. At approximately 6:15 p.m. that same day, the Oasis Pizzeria, also in Philadelphia, was robbed by three men who matched the description of the men involved in the earlier deli robbery and who also were seen fleeing the scene in a green Chevy Monte Carlo. At approximately 6:20 p.m., police stopped a green Chevy Monte Carlo containing two men who matched the description of those involved in the two robberies. One of these men was later identified as Perez. At approximately 6:30 p.m., the men were arrested and taken into custody.

¶ 4 At approximately 11:15 p.m., after conducting an investigation of the robberies, Detective George Fetters sat down to interview Perez regarding the robberies. At the time of his arrest, Perez had told Detective Fetters that his name was John Presberry and that his birthdate was November 23, 1978. Perez also provided Detective Fetters with an address and telephone number, and the name of his aunt, Gladys Berrios, with whom he was living. At 11:42 p.m., Detective Fetters checked the name John Presberry in the police computer to determine whether there had been any prior arrests. In doing so, the

---

1. Perez's subsequent Motion to Reduce Sentence was denied by the Court of Common Pleas on December 14, 1999, which noted that it lacked jurisdiction.

2. 18 Pa.C.S.A. § 3701.

3. 18 Pa.C.S.A. § 907 (possession of an instrument of a crime); 18 Pa.C.S.A. § 6108 (carrying a firearm on a public street); 18 Pa.C.S.A. § 903 (criminal conspiracy); and 18 Pa. C.S.A. § 2705 (reckless endangerment of another person).

4. On February 15, 2000, Perez filed a Petition for Relief under the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541, on the same grounds. The Petition was dismissed without prejudice by Order dated March 21, 2000, due to the pending direct appeal in this Court.

5. The trial judge in the case retired from the bench before an opinion could be issued.

detective discovered that Perez had given him a false name, birthdate, address and telephone number. However, at approximately 12:00 midnight, Detective Fetters was able to obtain the correct telephone number for the woman whom Perez alleged was his aunt. When confronted with the results of the police computer search, Perez finally admitted that his name was John Perez and provided his correct address and date of birth, January 22, 1980.

¶ 5 When provided with Perez's correct date of birth, Detective Fetters realized that Perez was a juvenile, and at 12:15 a.m. on November 25, 1996, another detective, Detective Harkins, telephoned Berrios, who refused to come to the precinct, but gave the detectives permission to speak to Perez.[6] By approximately 12:45 a.m., Perez was given his Miranda warnings and agreed to make a statement. Perez then confessed his involvement in both of the robberies.

■ ¶ 6 Rule 123 (formerly Rule 122) of the Pennsylvania Rules of Criminal Procedure requires that a person who is arrested be brought before a judicial officer for preliminary arraignment without unnecessary delay. Pa.R.Crim.P. 123. The purpose of this requirement is to protect an accused's right to know the nature and cause of the accusation against him, his right to counsel, and his right to reasonable bail. *Commonwealth v. Duncan,* 514 Pa. 395, 403, 525 A.2d 1177, 1181 (1987) (citations omitted).

¶ 7 In order to ensure prompt preliminary arraignment following arrest, our Supreme Court has held that prejudicial evidence obtained during unnecessary delay between arrest and arraignment is inadmissible at trial, unless such evidence has no relationship to the delay. *Commonwealth v. Futch,* 447 Pa. 389, 393–94, 290 A.2d 417, 419 (1972).[7] In defining what constitutes "reasonable delay", the Court explained:

> Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested.

*Id.* at 392, 290 A.2d at 418 (citing *Adams v. United States,* 399 F.2d 574, 579 (D.C.Cir. 1968) (concurring opinion)).

¶ 8 However, the flexible standard of *Futch* proved difficult for law enforcement officers to apply, and in *Commonwealth v. Davenport,* 471 Pa. 278, 286–87, 370 A.2d 301, 306 (1977), the Pennsylvania Supreme Court established a rule which provided that when an accused is not arraigned within six hours of arrest, any statements obtained after arrest but before arraignment are inadmissible at trial.

¶ 9 The *Davenport* rule was later modified by the Court in *Commonwealth v. Duncan, supra,* in which the Court held that statements which are obtained within six hours after arrest are admissible even when arraignment does not occur within six hours after arrest. *Id.* at 406, 525 A.2d

---

6. On December 2, 1996, Perez was certified to stand trial in the Criminal Section of the Philadelphia Municipal Court. Perez's counsel's subsequent motion to decertify and remand the case to juvenile court for trial was denied by the trial court and Perez was tried as an adult. This issue has not been raised on appeal.

7. In *Futch,* the defendant alleged a violation of Rule 118 (now Rule 102) of the Pennsylvania Rules of Criminal Procedure which provided:

> [w]hen a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him.
> (a) if the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment.

*Futch,* 447 Pa. at 391 n. 1, 290 A.2d at 418 n. 1 (citing former Pa.R.Crim.P. 118).

at 1182–83. The Court explained its reasoning for the modification as follows:

> Our adoption of the more rigid standard of *Davenport* was an attempt to assure more certain and even-handed application of the prompt arraignment requirement, and provide greater guidance to trial courts and law enforcement authorities.... [I]mplicit in our holding was a determination that a delay of six hours between arrest and arraignment is an acceptable period of time to accommodate conflicting interests without creating such a coercive effect so as to violate the rights of an accused. Therefore, the focus should be upon *when* the statement was obtained.... If the statement is obtained within the six-hour period, absent coercion or other illegality, it is not obtained in violation of the rights of an accused and should be admissible. In keeping with the underlying objectives of the rule, only statements obtained after the six-hour period has run should be suppressed on the basis of *Davenport*.

*Id.* at 405–06, 525 A.2d at 1182–83.

¶ 10 The *Davenport–Duncan* rule was further refined in *Commonwealth v. Odrick*, 410 Pa.Super. 245, 251–53, 599 A.2d 974, 977 (1991), in which this Court held that "absent facts pointing to an unnecessary delay due to police misconduct, voluntary statements given by a defendant and initiated within six hours after arrest may not be suppressed just because the process of obtaining the statement runs over six hours."

¶ 11 In the present case, Perez contends that because he was arrested at approximately 6:30 p.m., and police did not begin interrogating him until 12:45 a.m., the statements he made to police during the interrogation should be suppressed on the ground that they were not obtained within six hours of his arrest. Indeed, the interrogation that produced Perez's statements did not begin until approximately fifteen minutes past the six-hour period following his arrest. However, in this instance we do not believe that *Duncan* requires suppression of the statements.

¶ 12 We base our decision on the fact that the delay in this case was deliberately caused by Perez himself. Detective Fetters first sat down to interview Perez at approximately 11:15 p.m., less than five hours following Perez's arrest. However, as a result of Perez's lies regarding his name, birthdate, address and telephone number, Detective Fetters was forced to spend additional time determining Perez's identity. Detective Fetters checked the name John Presberry in the police computer at 11:42 p.m. At that time, he discovered that the name was false, and from 11:42 p.m. to approximately 12:00 a.m., he conducted further research to determine Perez's identity. At 12:00 a.m., when confronted by police about the misinformation, Perez finally provided his true name and date of birth, thereby revealing that he was a juvenile. Accordingly, another detective then contacted Perez's aunt, for whom police had located an address and telephone number, to obtain permission to interview Perez. At 12:45 a.m., Perez was read his Miranda rights and Detective Fetters began the interrogation, which ended at approximately 4:30 a.m. Thus, by providing the police with false information, Perez delayed his interrogation by more than one hour, i.e., from 11:42 p.m. to 12:45 a.m.

¶ 13 This Court recognizes that a defendant is under no obligation to provide the police with information as to his identity or any other matter. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); U.S. Const. amend. V. However, once a defendant chooses to talk with the police, he should not profit from any delay his untruths may cause.

¶ 14 Our conclusion is supported by prior opinions of this Court in which we have expressed a reluctance to allow a defendant to profit from a delay that he caused intentionally. For example, in *Commonwealth v. Devan*, 338 Pa.Super.

95, 487 A.2d 869 (1985) (Hoffman, J.; Del Sole, J. concurring in the result; with Montemuro, J. filing a concurring opinion),[8] the appellant was arrested at approximately 3:30 p.m. for shoplifting at a department store. At the time of her arrest, the appellant told police that her name was Sylvia Gray and that she was seventeen years old. Consequently, the appellant was turned over to the juvenile division, but police were unable to verify her name. At approximately 5:20 p.m., the appellant told the police that her name was Charlene Devan. The police were unable to verify this name, and at 8:00 p.m. police reread appellant her Miranda rights and began to question her. At that time, appellant restated that her name was Charlene Devan and instructed police where they could find her identification. After further investigation, the police eventually prepared a new complaint, which was completed at approximately 11:00 p.m. Between 11:00 p.m. and 11:30 p.m. the officers attempted to have the appellant arraigned, but no magistrate was available. Therefore, the complaint was sent to the magistrate at 9:00 a.m. the following morning and the appellant was not arraigned until approximately noon that day.

¶ 15 The appellant in *Devan* alleged that because she was not arraigned until approximately 20½ hours after her arrest, under *Davenport*, her oral statements and the physical evidence obtained as a result thereof should be inadmissible. The Commonwealth argued that the delay was excusable because of exigent circumstances, namely, the appellant's own actions of lying to the police about her name.

¶ 16 In *Devan*, this Court, noting that part of the delay in arraigning the appellant was due to her own actions, concluded that the portion of the delay caused by the appellant, namely, from 3:30 p.m. to 5:20, should be excluded in determining whether the *Davenport* rule had been violated.[9] *Id.* at 872. In doing so, this Court relied on several cases, including *Commonwealth v. Gallo*, 276 Pa.Super. 562, 419 A.2d 601 (1980) and *Commonwealth v. Machi*, 294 Pa.Super. 338, 439 A.2d 1230 (1982). These cases involved alleged violations of Rule 1100 of the Pennsylvania Rules of Criminal Procedure, which guarantees a defendant a prompt trial. In *Gallo* and in *dicta* in *Machi*,[10] this Court stated that a

---

**8.** We acknowledge the Dissent's position that *Devan* is not precedential due to the fact that Judge Montemuro's concurring opinion did not specifically endorse any particular part of Judge Hoffman's opinion. In cases where a concurring opinion enumerates the portions of the majority opinion in which the author joins or disagrees, analysis of the precedential value of the majority is simple. In cases such as *Devan*, however, where the concurrence does not explicitly state agreement or disagreement, we must look to the substance of the concurrence.

Based upon our reading of Judge Montemuro's concurring opinion, we do not believe that it rejects the proposition for which we rely on *Devan*, that a defendant should not profit from a delay which he deliberately has caused. In his concurrence, Judge Montemuro advocated a departure from the technical six-hour rule established in *Davenport* in favor of an approach which would require the Commonwealth to prove that a delay in arraigning a defendant was not unnecessary. Although Judge Montemuro concluded that the Commonwealth had not met that burden in *Devan*, it is clear that he opposed the six-

hour rule as a *per se* rule of exclusion. Moreover, even if *Devan* lacks precedential value, this Court may consider it for its persuasive value. *See Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841 (1977).

**9.** In *Devan*, this Court ultimately held that, even excluding the two hours between the time of the appellant's arrest, at which she gave a false name, and the time she provided police with her real name, the appellant was not arraigned until 18½ hours after arrest, and therefore, pursuant to *Davenport*, reversed the judgment of sentence.

**10.** In *Machi*, the defendant's trial was postponed pending a decision by the Supreme Court regarding the constitutionality of the Pittsburgh Police Magistrate's Court. By the time the Supreme Court rendered its decision that the Magistrate's Court was constitutional, approximately one year had passed since the filing of the complaint against Machi. Machi was convicted and on appeal argued that he had not received a prompt trial pursuant to Rule 1100. This Court ultimately reversed the judgment of sentence, holding that Machi

defendant cannot profit from a delay in being brought to trial that he or she has caused.[11] *See also Commonwealth v. Herbert,* 348 Pa.Super. 566, 502 A.2d 690 (1985) (Where defendant seeking immunity from prosecution under Rule 1100 made himself "unavailable" for trial by hiding under an alias while incarcerated, that portion of time was properly excluded in determining whether defendant received a speedy trial.).

¶ 17 In light of this Court's prior guidance, we shall, therefore, employ the same approach we took in *Devan,* and exclude the period of time between Perez's arrest, during which he gave police a false name, and the time at which he provided the police with his true identity, i.e., from 6:30 p.m. until midnight. We therefore conclude, for purposes of determining whether Perez's statements were obtained in violation of the *Duncan* rule, that the clock should begin ticking at midnight, when Perez provided police with his real name, rather than at the time of his arrest when he provided police with false and misleading information. As Perez's interrogation ended at 4:30 a.m., Perez's statement was

necessarily initiated and completed by 4:30 a.m., which is within six hours of midnight.

¶ 18 To suppress Perez's statements under a strict application of the six-hour *Duncan* rule would reward Perez for lying to the police and would send a message that by using delay tactics, criminal defendants may create a basis on which to suppress a confession. This is clearly not the intended effect of the rule. We are further guided in our decision by the following language by our Supreme Court in *Duncan* :

> This Court never intended that the rule of *Davenport* be rigidly applied in all situations without regard to the purpose of the rule and the evils sought to be avoided by its application. "At no time did we wish to cut off freely volunteered confessions of guilt, nor did we wish to impede legitimate law enforcement efforts. The primary purpose sought to be obtained was to discourage the obtaining of incriminatory information through coercive means, and it was felt that the mere passage of time while

did not waive his fundamental right to a prompt trial because there was no signed statement or on-the-record colloquy to that effect. In *Machi,* this Court also noted that the record indicated that the postponement of trial was by mutual agreement between the Commonwealth and defense counsel.

11. We recognize that *Devan* was decided prior to the *Duncan* modification of *Davenport.* However, we do not find the Court's refusal to allow the appellant in *Devan* to profit from the delay caused as a result of her lies to the police, or our holding in the present case, to be inconsistent with the Court's intended purpose in *Duncan.*

We are also cognizant of this Court's decision in *Commonwealth v. Goldsmith,* 422 Pa.Super. 191, 619 A.2d 311 (1993), in which the appellee gave a statement to police within six hours of his arrest. Shortly after the expiration of six hours, however, the appellee volunteered to police that his prior statement was false and that he wanted to make an accurate statement. Prior to taking the statement, police had appellee sign a form acknowledging that he had been informed by police that after

he had been in police custody for six hours, he was not required to talk with police, that everything he told them after the six hours could not be used against him in court unless he waived his rights, and that he wished to continue to talk to police knowing that anything he said could be used against him. In affirming the trial court's suppression of Goldsmith's subsequent statements, this Court ultimately held that the six-hour rule serves constitutional ends and that Goldsmith could not waive its protection. However, this Court expressly limited its review to the specific facts of that case, and stated that:

> even if we were to find that waiver is possible, we are compelled to find that the six-hour arraignment rule cannot be waived under the circumstances of this case: *where the waiver was executed more than six hours after arrest* or where the purported waiver is inadequate to inform appellant of the rights which he forgoes.

*Id.* at 315 (emphasis added).

Significantly, Perez's actions, lying to the police, which give rise to our analysis herein, occurred prior to the expiration of the six-hour period following his arrest.

under arrest could have a coercive effect on the defendant."

*Duncan*, 514 Pa. at 406, 525 A.2d at 1182 (citation omitted).

¶ 19 Recently, in *Commonwealth v. Devine*, 750 A.2d 899 (Pa.Super.2000), this Court held that where an appellant was held in police custody for nearly five and one-half hours before he was questioned and completed his statement within six and one half hours after being taken into custody, there was no violation of the *Davenport–Duncan* rule. *Id.* at 903. Significantly, in its analysis, this Court in *Devine* discussed the Pennsylvania Supreme Court analysis of applicability of the six-hour rule in *Commonwealth v. Washington*, 547 Pa. 550, 692 A.2d 1018 (1997), and explained:

> the Court in *Washington* declined to find a violation of the *Davenport–Duncan* rule since the appellant in that case gave an inculpatory statement within five (5) hours of being questioned in an interrogation room even though he had been in police custody for approximately twenty-eight (28) hours. The *Washington* Court noted that the record did reveal that appellant had languished in a holding cell while being processed into the criminal justice system on an unre-

lated charge prior to his removal to the interrogation room and questioning on the murder charge for which he was convicted. Even so, the Court found that no violation of the *Davenport–Duncan* rule existed due to its premise, which is based upon "a desire to avoid the coercive effect of *prolonged police interrogation.*" *Id.* 547 Pa. at 561, 692 A.2d at 1023 (emphasis supplied).

*Devine*, 750 A.2d at 903.[12]

¶ 20 Perez does not allege that his confession was coerced, unknowing, or involuntary. As in *Washington*, supra, there was no prolonged period of interrogation of Perez by police. Rather, Perez seeks suppression of his statements based on a technical application of the six-hour rule. In view of the cause of the delay and circumstances surrounding it in this case, suppression of the statements made to police by Perez would not comport with the spirit behind the rule or with this Court's previous rulings that a defendant should not profit from a delay which he himself has caused.

¶ 21 For the reasons discussed above, we find no error in the trial court's denial of Perez's motion to suppress the state-

---

**12.** The Pennsylvania Supreme Court most recently had the opportunity to address the *Davenport–Duncan* rule in *Commonwealth v. Bridges*, —— Pa. ——, ——, 757 A.2d 859, 864–65 (2000). In a case involving the interrogation regarding a murder investigation, the Court determined the rule to be inapplicable where a defendant is subject to a custodial interrogation that is unrelated to the purpose for which he or she has been detained. *Id.* ——, 757 A.2d at 870–72. In her Opinion, speaking for the majority of the Court, Justice Neman acknowledged that "[t]he rule has many critics who believe that it arbitrarily sets a time limit for arraignment and excludes statements that may, in fact, have been given knowingly, voluntarily and intelligently." *Id.* at —— n. 11, 757 A.2d at 871 n. 11 (citing *Commonwealth v. Hughes*, 521 Pa. 423, 461, 555 A.2d 1264, 1284 (1989) (McDermott concurring) (criticizing the "mechanical and discredited six-hour rule"); *Commonwealth v. D'Amato*, 514 Pa. 471, 487, 526 A.2d 300, 307

(1987) (observing "[w]hatever validity the *Davenport* rule retains, its 'six-hour clock' does not begin to run ... until the defendant has been returned to the judicial district wherein the arrest warrant was issued.")). Indeed, in his Concurring Opinion, in which Justice Cappy joined, Justice Saylor criticized the rule, stating, "[g]iven the present holding, I now favor abandonment of the *Davenport/Duncan* construct and reversion to the federal model entailing consideration of the totality of the circumstances in every case." *Bridges*, —— Pa. at ——, 757 A.2d at 883 (citing to *Arizona v. Fulminante*, 499 U.S. 279, 285–86, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991)). Justice Saylor went on to opine, "I find the federal model vastly superior to continuation of a rule so readily capable of avoidance as to function as no rule at all; indeed, I believe that its maintenance on such terms carries with it the potential for diminishing respect for the courts' authority in the eyes of those subject to their lawful mandates." *Id.*

ments which he made to police on the grounds that they were not obtained within six hours of his arrest.

¶ 22 Judgment of Sentence affirmed.

¶ 23 Judge JOHNSON files a Dissenting Opinion.

JOHNSON, J., dissenting:

¶ 1 I respectfully dissent from my distinguished colleagues' Majority Opinion because I conclude that the trial court erred in denying John Perez's motion to suppress his statement. Currently, the six-hour rule enunciated in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), and refined in *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987), requires the suppression of a statement made by a defendant after arrest and prior to arraignment if the statement is given after the elapse of six hours following arrest. *See Commonwealth v. Odrick*, 410 Pa.Super. 245, 599 A.2d 974 (1991). In the instant case, the record shows, and the Majority acknowledges, that Perez's statement was made prior to arraignment and that he commenced giving his statement after the six hours following his arrest had elapsed. Accordingly, I would reverse the judgment of sentence and remand for a new trial.

¶ 2 The Majority concludes that Perez should be denied the protection of the six-hour rule because his untruthfulness with police delayed his arraignment. *See* Majority Opinion at 876 (stating that "as a result of Perez's lies regarding his name, birthdate, address and telephone number, Detective Fetters was forced to spend additional time determining Perez's identity"). Therefore, the Majority holds that the six-hour rule does not require suppression because "the delay in this case was deliberately caused by Perez himself." *Id.* I disagree with the Majority's conclusion and find its jurisprudence problematic for three reasons. First, the Majority anchors its analysis in a case that has no precedential value. Second, the Majority's

holding permits police officers to postpone a criminal defendant's arraignment while they do investigative work that is not a necessary prerequisite to the arraignment. Third, the Majority's holding contravenes Pennsylvania Supreme Court precedent by abrogating the safeguards established by the Court in *Davenport* and *Duncan*, *supra*. In the following discussion, I shall address these issues *seriatim*.

¶ 3 First, the Majority cites to *Commonwealth v. Devan*, 338 Pa.Super. 95, 487 A.2d 869 (1985), as the foundation for its holding. *Devan* was decided by a three judge panel consisting of Judge Del Sole, Judge Montemuro, and Judge Hoffman. Judge Hoffman wrote the opinion, Judge Del Sole concurred in the result, and Judge Montemuro wrote a concurring opinion. Thus, no other judge joined Judge Hoffman's opinion. Importantly, Judge Montemuro's concurring opinion does not endorse any part of Judge Hoffman's opinion. "Unless an issue in a panel decision commands a majority both as to result and as to rationale, the principle embodied in the issue is not precedential." *Askew v. Zeller*, 361 Pa.Super. 35, 39–41, 521 A.2d 459, 462 (1987) (emphasis added). *See also Commonwealth v. Price*, 543 Pa. 403, 407–09, 672 A.2d 280, 282 (1996) (stating that a plurality decision is non-precedential). Consequently, *Devan* has absolutely no precedential value. *See id. See also Podrat v. Codman–Shurtleff, Inc.*, 384 Pa.Super. 404, 558 A.2d 895 (1989) (stating that an opinion "not joined by a majority of the participating judges is not precedential"). Accordingly, I conclude that the Majority's reliance upon *Devan* is in error.

¶ 4 Moreover, I cannot agree with the Majority's attempt to analogize this case to that of a defendant who makes him or herself unavailable for trial and then seeks the protection of Rule 1100. *See* Pa. R.Crim.P. 1100 (requiring that a trial commence no later than 270 days from the date on which the complaint is filed). The Majority, following the rationale of Judge Hoffman's opinion in *Devan*, discusses

three such cases: *Commonwealth v. Herbert*, 348 Pa.Super. 566, 502 A.2d 690 (1985); *Commonwealth v. Machi*, 294 Pa.Super. 338, 439 A.2d 1230 (1982); and *Commonwealth v. Gallo*, 276 Pa.Super. 562, 419 A.2d 601 (1980). Each of these cases is readily distinguishable. In *Herbert* and *Gallo*, the defendants made themselves physically unavailable for trial either by evasion or deception. In *Machi*, the defendant's counsel requested a postponement of the proceedings pending the outcome of a Supreme Court case regarding the constitutionality of the Pittsburgh Police Magistrate's Court. By the time the Supreme Court had decided the case and upheld the constitutionality of the Magistrate's Court, over eleven months had passed since the complaint had been filed against the defendant, Machi. One month after the Supreme Court's decision, Machi was tried in a bench trial and convicted. On appeal, Machi claimed that he was not tried within the time period required by Rule 1100. Though in *dicta* we stated that "a defendant may not benefit from a delay that he has caused[,]" we reversed the judgment of sentence and ordered Machi released because we concluded that Machi did not waive his right to a prompt trial. *Machi*, 439 A.2d at 1233. The Majority relies upon *Machi*, *Gallo*, and *Herbert*, for the proposition that "a defendant cannot profit from a delay in being brought to trial that he or she has caused." Majority Opinion at 877–78. However, these cases are not analogous to the instant one because Perez's untruthful statements did not make him physically unavailable for arraignment, nor did Perez waive his right to a prompt arraignment under Pa.R.Crim.P. 123. Thus, I conclude that the Majority's reliance on the foregoing cases is misplaced.

¶ 5 Second, the Majority states that although a defendant is under no obligation to provide the police with information as to his identity or any other matter, "once a defendant chooses to talk with the police, he should not profit from any delay his untruths may cause." Majority Opinion at 876. Initially, I note that we are not here addressing a defendant's rights subsequent to arraignment or the quantum of information a defendant must give the police in order for him to be entitled to bail. On these facts, I am at a loss to discover the elusive profiteering that a defendant purportedly commits when he or she lies to the police. A defendant's untruthful statements do not spring him from incarceration or give him a tangible advantage over his interrogators. Nor do a defendant's untruthful statements "cause" the delay in being brought to arraignment. Regardless of the lies that a defendant spews forth, he can be arraigned at any time.

¶ 6 At issue in this case is whether a statement should be suppressed when it is made after the passage of a certain period of time and prior to arraignment. In *Duncan*, our Supreme Court reiterated that this exclusionary rule

> "was adopted not simply to guard against the coercive influence of custodial interrogation, but to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." *Davenport*, 370 A.2d at 305.

> While [this exclusionary principle] was not designed to terminate police interrogation, it was intended to interrupt it after a reasonable period of time to allow the suspect to be advised of his custodial rights by an impartial judicial officer, as opposed to police officials, and in appropriate cases to establish the conditions of his release pending trial.

525 A.2d at 1181 (citations omitted) (quoting *Commonwealth v. Jenkins*, 500 Pa. 144, 147–49, 454 A.2d 1004, 1006 (1982)). Stated more directly, the very purpose of the six-hour rule is to allow for and require judicial arraignment after a strictly limited period of time. *See* BLACK'S LAW DICTIONARY 104 (7th ed.1999) (defining "arraignment" as: "The initial step in a criminal

prosecution whereby the defendant is brought before the court to hear the charges and to enter a plea"). Surely, if the police can bring a defendant to be arraigned without delay even when the defendant does not give the police one iota of information, as it is a defendant's right to remain silent, then the police should also be able to bring a defendant to be arraigned when they are given false information. Put another way, the police did not need Perez's correct name, address or telephone number to arraign him. Nor was Perez under a duty to cooperate with the police in their investigation or be truthful with them. Thus, contrary to the Majority's assertion that Perez's dishonesty caused the delay in his arraignment, the delay in this case can only be attributed to the police who chose to do unnecessary investigative work before bringing Perez to arraignment.

¶ 7 Thirdly, the Majority's decision is guided by a quote from *Duncan* in which our Supreme Court stated that the primary purpose of the six-hour rule " 'was to discourage the obtaining of incriminatory information through coercive means, and it was felt that the mere passage of time while under arrest could have a coercive effect on the defendant.' " Majority Opinion at 878–79 (quoting *Duncan*, 525 A.2d at 1182). The Majority goes on to state that "Perez does not allege that his confession was coerced, unknowing or involuntary." *Id.* at 879. However, this analysis is of no import when one considers that the Supreme Court's rationale in establishing the six-hour rule was that the "mere passage of time" while under arrest could have a coercive effect on a defendant. *Duncan*, 525 A.2d at 1182 (emphasis added). Moreover, after a review of the many Supreme Court cases on this issue, I am unable to find any support for the proposition that a defendant either must allege or show that his or her statements, in addition to being made after the elapse of six hours following arrest and prior to arraignment, were in fact the result of coercion or were unknowing or involuntary.

¶ 8 In conclusion, I acknowledge the Majority's advocacy of abrogating the six-hour rule. *See* Majority Opinion at 879 n. 12 (citing *Commonwealth v. Bridges*, —— Pa. ——, 757 A.2d 859 (2000), solely for the proposition that the six-hour rule is now viewed unfavorably by some members of our Supreme Court). It is beyond our authority, however, to discard the six-hour rule so long as it remains binding Supreme Court precedent. In fact, the very case upon which the Majority relies for illustrating the unpopularity of the six-hour rule actually reaffirms the rule as binding law in our Commonwealth. *See Bridges*, 757 A.2d at 871–72. Faced with over two decades of Supreme Court precedent on this issue, we may not now eviscerate the rule in such a way that reverts us back to a method of determining unnecessary delay by examining the particular circumstances of each interrogation.

¶ 9 So long as the six-hour rule remains the law of this Commonwealth, I am wary of the curtailment advocated by the Majority. The Majority's holding would diminish established safeguards against potential police abuses affixed by our Supreme Court. This curtailment of a defendant's right to be arraigned without unnecessary delay would expose our criminal justice system to potential abuse by law enforcement officials. A defendant is under no obligation to inform the police of his true identity or to give the police any information whatsoever. Surely, the Supreme Court recognized this when it fashioned the six-hour rule. The reality of the criminal justice system is that defendants routinely lie to the police. If police officials could delay the six hour period by the amount of time it takes to verify information obtained from an arrestee, when such information is unnecessary to the commencement of an arraignment procedure, the six-hour rule would no longer exist. Therefore, I dissent.