J-S84029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID SCOTT TEETER | : | |
| | : | |
| Appellant | : | No. 1748 EDA 2018 |

Appeal from the PCRA Order May 11, 2018
In the Court of Common Pleas of Wayne County
Criminal Division at No(s):  CP-64-CR-0000217-2014

BEFORE:  BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                     **FILED APRIL 18, 2019**

David Scott Teeter[1] appeals from the order entered May 11, 2018, in the Wayne County Court of Common Pleas, denying her first petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  Teeter seeks relief from the judgment of sentence of an aggregate term of 12 to 26 years' imprisonment, imposed following her conviction of two counts of rape and one count of endangering the welfare of a child[2] for the sexual assault of her stepdaughter, A.H., and her biological daughter, S.T., at a time when they were both under the age of 13 years old.

---

[1] Teeter is transgender and identifies as a woman.  **See** Teeter's Brief at 5 n.1.  Therefore, we will refer to Teeter using the pronouns "her" and "she."

[2] **See** 18 Pa.C.S. §§ 3121(a)(6) and (c), and 4304, respectively.

On appeal, Teeter raises two claims asserting the ineffective assistance of trial counsel. For the reasons below, we affirm.

The pertinent testimony presented during Teeter's jury trial was summarized by a panel of this Court in the memorandum decision affirming Teeter's judgment of sentence on direct appeal:

> A.H., who was born in January 1991, testified that [Teeter] was her stepfather. A.H. stated that [Teeter] has "been in my life since I [was] 2 years old. [Sh]e's been the one I thought was dad." A.H. testified that when she was seven or eight years old, [Teeter] began raping her. A.H. testified that she "just laid there and held my teddy bear." She said that [Teeter] told her "it was normal to do it with my father." [Teeter] also told her "to keep [her] mouth shut or [her] mom and sister [were not going to] be here anymore." A.H. testified that she was afraid of [Teeter] and did not tell her mother because [Teeter] had "gotten abusive before" and she did not think her mother would believe her. [Teeter] raped A.H. continuously for ten years, from the time she was eight until she was 18. A.H. testified, "[i]t's impacted my life in every way. I can't keep a relationship, can't keep a job, I have a horrible relationship with my mother now. I'm just not the same."
>
> A.H.'s step-sister, S.T., born in October 2000, testified to being [Teeter's] daughter. S.T. testified that when she was nine years old, [Teeter] left her alone at a gas station for an hour. She stated that when [Teeter] returned, and they were driving home, [Teeter] "would reach into my pants and ... put [her] fingers inside" [S.T.'s] vagina. [Teeter], who weighed over 300 pounds at the time, told S.T. "that if [she] told anyone [Teeter] was going to hurt [her] and whoever [she] told." S.T. did not tell her mother because she "was afraid [Teeter] was going to hurt me and her [mother]." [Teeter] continued to molest S.T. on approximately eight more occasions. Eventually, S.T. began cutting her arms, and when S.T.'s friends saw the cuts, they went to their school office seeking help. S.T. then told school officials about [Teeter's] actions, and the school officials contacted police. S.T. went with her mother to the State Police Barracks where she was interviewed regarding the incidents with [Teeter]. S.T. testified, "It changed who I am. I'm afraid to actually go out in public

because people know.  Having to deal with this I've gained weight really fast."

* * * *

[Teeter] testified in [her] defense.  [She] stated that [she] "came out as transgender in 2012," and [her] "mind is female, and unfortunately [her] body is male."  [Teeter] said [she] "[m]ost definitely [did] not" commit the crimes with which [she] was charged.  With regard to the molestation of S.T., [Teeter] said, "[n]ot only did [I] not do it, but it's physically impossible [because] I'm wearing a seat belt, there's no way I can reach that passenger seat; if I can it's just the edge of the seat."  With regard to the rapes of A.H. over a ten year period, [Teeter] testified that [she] "never had unsupervised contact with [A.H.]."[4]  [Teeter] explained the charges against [her], stating, "[the girls'] mother's been slighted, she's not getting her child support on time like she wants.  She's vindictive and she uses the children as a weapon."  [Teeter] described the charges against [her] as "bogus lies."  On cross-examination, [Teeter] testified that [she] had been transgender "all [her] life," but also stated that [she] married two women, and had three children [as a male].  In addition, [Teeter] averred that [she] had "been drugged eight days in a van in a cube to be put on trial for charges I never did."

---

[4] On cross-examination, [Teeter] conceded [she] was alone with A.H. when [she] took her on "road calls" in [her] work truck, and stated "I stand corrected." N.T., 1/13/15 (victim/defendant), at 94.

---

[Teeter] called Nicholas Dzwonczyk to testify.  Mr. Dzwonczyk testified to knowing [Teeter] for ten years, and stated that [Teeter] "was very well respected" in the community, and had a reputation for being peaceful and law abiding.

Finally, the Commonwealth called Dawn Teeter on rebuttal.  Mrs. Teeter testified that [Teeter] was her husband with whom she has two biological daughters, including S.T.  Mrs. Teeter also testified that there were times [Teeter] was alone with both S.T. and A.H.  Mrs. Teeter was aware that [Teeter] was transgender.  Mrs. Teeter denied telling her daughters to make allegations against [Teeter].

- 3 -

*Commonwealth v. Teeter*, 141 A.3d 593 [No. 2082 EDA 2015] (Pa. Super. 2016) (unpublished memorandum at *1-*2) (record citations and some footnotes omitted).

On September 22, 2014, the Commonwealth filed an information charging Teeter with the following 13 offenses: (1) three counts of rape and one count of involuntary deviate sexual intercourse with respect to victim A.H., and (2) eight counts of aggravated indecent assault and one count of endangering the welfare of a child with respect to victim S.T.[3] Relevant to the claims raised herein, on October 20, 2014, three months before trial, appointed counsel filed a motion to withdraw because Teeter had filed a complaint against him before the Pennsylvania Supreme Court's Disciplinary Board. The complaint set forth Teeter's dissatisfaction with counsel's representation. *See* Motion to Withdraw as Counsel, 10/20/2014, Exhibit A, Complaint Information Form, 9/29/2014. The trial court held a hearing, and denied the motion on October 24, 2014. The court found Teeter's "mere dissatisfaction" with counsel's representation was insufficient to "establish good cause" required for the appointment of new counsel. Order, 10/24/2014.

The case proceeded to a jury trial. On January 14, 2015, the jury found Teeter guilty of two counts of rape, with respect to A.H., and one count of endangering the welfare of children, with respect to S.T. Teeter was acquitted

---

[3] *See* 18 Pa.C.S. §§ 3121 (a)(6), (c), and (a)(2); 3123(a)(2); 3125(a)(7), and 4304, respectively.

of the remaining nine offenses. On April 16, 2015, the trial court imposed consecutive sentences of 66 to 132 months' incarceration on each count of rape, and a consecutive term of 12 to 48 months' incarceration for endangering the welfare of a child, for an aggregate term of 12 to 26 years' imprisonment. The court also notified Teeter that she would be subject to lifetime registration as a Tier III sex offender under SORNA. Teeter filed a post-sentence motion, which was denied by the trial court, and a timely direct appeal. As noted above, a panel of this Court affirmed the judgment of sentence, and, on August 30, 2016, the Pennsylvania Supreme Court denied allocator review. **See Teeter**, **supra**, 141 A.3d 593, *appeal denied*, ___ A.3d ___ [323 MAL 2016] (Pa. 2016).

On May 30, 2017, Teeter filed a timely, *pro se* PCRA petition, challenging the ineffective assistance of trial counsel. PCRA counsel was appointed two months later. Although counsel did not file an amended petition, he did request the PCRA court conduct an evidentiary hearing on Teeter's claims. A PCRA hearing was held on January 8, 2018, during which both Teeter and trial counsel testified. Thereafter, on April 8, 2018, Teeter filed a *pro se* motion, entitled "Motion to be Removed from SORNA," seeking an order exempting him from registration under SORNA based upon the Pennsylvania Supreme Court's decision in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017),

*cert. denied*, 138 S.Ct. 925 (U.S. 2018).[4]  The PCRA court entered an order

on May 7, 2018, indicating it would not consider the motion because Teeter

was represented by counsel.  On May 11, 2018, the court denied Teeter's

PCRA petition.  This timely appeal followed.[5]

In both issues raised on appeal, Teeter contends trial counsel rendered

ineffective assistance.  Our review of an order denying PCRA relief is well-

settled:

> This Court reviews a PCRA court's decision in the light most favorable to the prevailing party.  **Commonwealth v. Hanible**, 612 Pa. 183, 30 A.3d 426, 438 (2011).  Our review is limited to a determination of whether the record supports the PCRA court's factual findings and whether its legal conclusions are free from error.  **Id.**  "A PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court."  **Commonwealth v. Treiber**, ____ Pa. ____, 121 A.3d 435, 444 (2015) (citing **Commonwealth v. Dennis**, 609 Pa. 442, 17 A.3d

---

[4] In **Muniz**, the Pennsylvania Supreme Court held SORNA's registration provisions constitute punishment, and, therefore, the retroactive application of those provisions violates the *ex post facto* clauses of the federal and Pennsylvania constitutions.  **Muniz**, **supra**, 164 A.3d at 1193.

[5] On June 8, 2018, the PCRA court directed Teeter to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  PCRA counsel did not comply with that order, but rather, on July 3, 2018, filed a motion for withdrawal in this Court because counsel had been appointed as an assistant district attorney in another county.  By order entered July 20, 2018, this Court granted counsel's motion, and directed the PCRA court to appoint new counsel within 10 days.  Present counsel was appointed on July 26, 2018, and filed a concise statement on November 5, 2018.  Although it does not appear that either prior or present PCRA counsel requested an extension to file the concise statement, the PCRA court accepted the late statement, and addressed the claims in its opinion.  Based upon the late change of counsel, we decline to find waiver.

297, 301 (2011)). We review the PCRA court's legal conclusions de novo. ***Commonwealth v. Roney***, 622 Pa. 1, 79 A.3d 595, 603 (2013).

***Commonwealth v. Williams***, 141 A.3d 440, 452 (Pa. 2016). Furthermore, where, as here, the defendant alleges counsel rendered ineffective assistance, we note:

> "In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'" ***Commonwealth v. Payne***, 794 A.2d 902, 905 (Pa. Super. 2002), *quoting* 42 Pa.C.S.A. § 9543(a)(2)(ii). When considering such a claim, courts presume that counsel was effective, and place upon the appellant the burden of proving otherwise. ***Id.*** at 906. "Counsel cannot be found ineffective for failure to assert a baseless claim." ***Id.***
>
> To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him. ***Commonwealth v. Allen***, 833 A.2d 800, 802 (Pa. Super. 2003).

***Commonwealth v. Michaud***, 70 A.3d 862, 867 (Pa. Super. 2013). "To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." ***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015).

First, Teeter argues trial counsel was ineffective for failing to seek to withdraw from representation after a breakdown in the attorney-client relationship. ***See*** Teeter's Brief at 15. She asserts she was so "deeply

concerned with trial counsel's performance and his lack of pre-trial investigation" that she filed a complaint against him with the disciplinary board. *Id.* at 17. Although counsel filed a motion to withdraw based upon that complaint, the court denied the motion. Teeter insists the relationship then continued to "erode" as counsel decided not to call one of Teeter's daughters to testify without consulting Teeter, and reported Teeter's brother, another potential witness, to police just days before trial after her brother threatened counsel. *Id.* at 18. She claims "[b]ecause of these conflicts of interest, prejudice ought to be presumed[.]" *Id.* at 19. However, in any event, Teeter maintains that because of counsel's ineffectiveness, nearly all of her witnesses failed to testify. *See id.*

The PCRA court found Teeter "failed to establish that 'irreconcilable differences' existed between trial counsel and Teeter." PCRA Court Opinion, 5/11/2018, at 5. It is important to emphasize that trial counsel did request to withdraw after Teeter filed a disciplinary complaint against him. *See* Motion to Withdraw as Counsel, 10/20/2014. However, the trial court denied that motion because Teeter expressed only his mere dissatisfaction with counsel's performance, and did not establish the existence of "irreconcilable differences … between counsel and client." Order, 10/24/2014. The PCRA court found the same to be true here. The court opined:

> Trial counsel may have taken a strategic course of action that [Teeter] was dissatisfied with. However, dissatisfaction is not sufficient to establish that irreconcilable differences existed between counsel and [Teeter].

PCRA Court Opinion, 5/11/2018, at 5. We find no reason to disagree.

First, the record does not support Teeter's claim that counsel had "an actual conflict of interest that adversely affected his performance." Teeter's Brief at 16. The cases *Teeter* relies upon involving a conflict of interest of an attorney who represented a crucial witness at some point prior to trial. *See Commonwealth v. Reid*, 99 A.3d 427, 442 (Pa. 2014); *Commonwealth v. Karenbauer*, 715 A.2d 1086, 1094 (Pa. 1988). Even under those circumstances, the Supreme Court determined in both cases that no actual conflict of interest existed. *See Reid*, *supra*; *Karenbauer*, *supra*. Similarly, here, there was no actual conflict asserted. Rather, Teeter maintains the complaint she filed against trial counsel,[6] followed by counsel's failure to consult her before deciding not to call her daughter as a witness, and failure

---

[6] We note Teeter cites to this Court's decision in *Commonwealth v. Goldsmith*, 619 A.2d 311 (Pa. Super. 1993), *appeal denied*, 625 A.2d 1911 (Pa. 1993), in support of her allegation that the filing of a disciplinary complaint against an attorney is *per se* grounds for withdrawal. Indeed, in that case, the panel stated: "It is difficult to envision counsel being able to continue providing effective assistance following this obvious breakdown in the attorney-client relationship." *Id.* at 316. However, that case primarily concerned the Commonwealth's appeal of an order granting a defendant's motion to suppress evidence. *See id.* at 311-316. After determining the order should be affirmed, the panel noted counsel for appellee had petitioned the court to withdraw, based upon the fact the appellee "filed a complaint against counsel with our supreme Court's Disciplinary Board." *Id.* at 316. As noted above, the panel granted the motion to withdraw due to the "obvious breakdown in the attorney-client relationship." *Id.* That case, however, involved a different stage in the attorney-client relationship, and the panel did not specify the underlying basis of the appellee's complaint, as the trial court did here. Therefore, we do not find *Goldsmith* to be controlling.

to inform the court of Teeter's brother's threats, demonstrate a breakdown of the attorney-client relationship. We disagree. As both the trial court and PCRA court have found, Teeter's complaints focus on her dissatisfaction with counsel's strategy. Indeed, in her disciplinary complaint, Teeter stated she was "very dissatisfied" with counsel's representation during the preliminary hearing stage. Motion to Withdraw as Counsel, 10/20/2014, Exhibit A, Disciplinary Complaint at 3. Moreover, with respect to Teeter's daughter's proposed testimony, trial counsel explained he decided not to call her after speaking with her and realizing her testimony would not have been favorable. *See* N.T., 1/8/2018, at 26. Further, with regard to the threats by Teeter's brother, counsel stated he did not believe that created a conflict because he "was prepared to go to trial and so was [Ms.] Teeter." *Id.* This Court has found no "irreconcilable differences" where "the defendant merely alleges a strained relationship with counsel, where there is a difference of opinion in trial strategy, where the defendant lacks confidence in counsel's ability, or where there is brevity of pretrial communications." *Com. v. Floyd*, 937 A.2d 494, 497 (Pa. Super. 2007), *citing* **Commonwealth v. Grazier**, 570 A.2d 1054, 1055-1056 (Pa. 1990). Similarly, Teeter is entitled to no relief under the facts presented here.

Second, Teeter argues trial counsel was ineffective for failing to locate, investigate, interview, and call potential witnesses for trial. *See* Teeter's Brief at 19-23. Teeter claims counsel was aware of two witnesses who were willing to testify on her behalf at trial: her mother and her brother. However, counsel

chose not to call Teeter's elderly mother, who lived out of state, because she could not travel to the courthouse, and failed to call her brother after he "threatened to beat [counsel] up for not acting in" Teeter's best interest. *Id.* at 20. In addition, Teeter maintains she notified counsel of several other witnesses prior to trial, including Mark Underwood and Edward Novobilski, "both of whom Ms. Teeter believed would have testimony helpful to her defense." *Id.* at 21. However, as evidenced by letters admitted during the evidentiary hearing, counsel did not attempt to contact the witnesses until **after** her jury trial. Although Teeter acknowledges counsel's testimony that she provided him with these names during the appeal process, she insists "[w]hat is more probable is that trial counsel was ineffective in investigating witnesses prior to trial, which directly resulted in the lack of witnesses at Ms. Teeter's trial." *Id.* at 22.

In order to establish trial counsel was ineffective for failing to call certain witnesses at trial, a petitioner must demonstrate:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Brown*, 196 A.3d 130, 167 (Pa. 2018) (quotation omitted).

We agree with the PCRA court that Teeter failed to prove her claim. The court explained:

At the PCRA hearing trial counsel testified that he was aware of several possible witnesses and also that difficulties arose in procuring any of those witnesses for trial. [Teeter] testified similarly that these several possible witnesses existed, however, [Teeter] failed to establish whether they were willing and able to appear or that the proposed testimony was necessary in order to avoid prejudice to [her]. None of these missing witnesses appeared at the PCRA hearing and offered testimony or affidavits at the least to exonerate [Teeter].

PCRA Court Opinion, 5/11/2018, at 4.

Assuming, *arguendo*, Teeter gave counsel a list of potential witnesses before trial, a fact counsel denied,[7] Teeter has failed to establish the witnesses were available and willing to testify on her behalf at her trial. Furthermore, counsel explained that he did speak with Teeter's daughter and brother, but made the strategic decision not to call them as witnesses at trial. With regard to Teeter's daughter, counsel testified that, after speaking with her, he realized "her testimony was not going to be favorable[.]" *Id.* at 26. Moreover, he explained he did not call Teeter's brother because "there was a problem with his demeanor as [they] approached trial[,]" which was evidenced by the threats the brother made to counsel. *Id.* at 25. Lastly, although trial counsel stated Teeter's mother wanted to appear by video because she lived out of state, counsel stated he "told her no [because he] wanted her down here." *Id.* at 27. We find this to be a strategic decision by counsel, and Teeter has not demonstrated that counsel's failure to permit her mother to testify *via*

---

[7] *See* N.T., 1/8/2018, at 31.

video prejudiced her trial.[8]  Accordingly, Teeter's second ineffectiveness claim

fails as well.

Because we conclude the PCRA court did not err or abuse its discretion

in denying Teeter PCRA relief, we affirm the order on appeal.[9]

Order affirmed.[10]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/18/19

---

[8] We note Teeter did not establish his 74-year-old mother was physically unable to travel to Pennsylvania from her home in New Hampshire.  **See** N.T., 1/8/2018, at 9.

[9] We note Teeter also asserts in a one-sentence argument that counsel "neither filed a motion to modify bail so that Ms. Teeter could assist with the procurement of these witnesses, nor used his private investigator to help locate said witnesses."  Teeter's Brief at 22.  However, as noted **supra**, Teeter failed to demonstrate that any of these witnesses were available or willing to testify at trial.

[10] Our decision does not address Teeter's potential challenge to his registration requirements under SORNA following the Supreme Court's decision in **Muniz**, **supra**.  As noted above, Teeter raised this claim in a pro se filing while represented by counsel, and counsel did not seek to file an amended petition to address that argument.  Nothing in this decision precludes Teeter from filing a second PCRA petition to raise this issue.