599 A.2d 974

**COMMONWEALTH of Pennsylvania**

v.

**Carlton ODRICK, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 28, 1991.

Filed Oct. 16, 1991.

Reargument Denied Dec. 11, 1991.

10.  *See, e.g.,* 75 Pa.C.S.A. § 2001 *et seq.*

Regina M. Boutcher, Philadelphia, for appellant.

Frances Gerson, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before DEL SOLE, TAMILIA and HOFFMAN, JJ.

TAMILIA, Judge:

This is an appeal from the November 26, 1990 judgment of sentence of life imprisonment for murder in the first degree and a consecutive four (4) to twenty (20) year term of imprisonment for murder in the third degree.

Early in the morning of December 26, 1989, appellant, Carlton Odrick, confessed to his friend, Robert Hundley,

that he had just killed his sister, Lucille Odrick, and her friend, Dolores Jefferson, inside their apartment at 1515 Hemberger Way in Philadelphia, and asked Hundley to call the police. Officer Hughes arrived around 6:30 a.m. In response to the officer's question, "Can you tell me what happened?", appellant confessed, "I think I killed my sister and my sister's girlfriend" and "I think I stabbed them." Around 6:40 a.m., the police handcuffed appellant and proceeded to take him to homicide headquarters. During the ride, but not in response to any questioning by the officers, appellant repeatedly stated, "I killed both of them," "I stabbed them," and "I didn't mean to do it." The officers did ask appellant questions relating to his identification. At headquarters, appellant reiterated the confessions in a few short statements to police. Since there had been a murder committed the previous night in the same building at 1515 Hemberger Way, the detectives were initially confused as to which murder appellant was confessing. Around 7:30 a.m., the detectives brought appellant to an interrogation room. Without being asked any questions, appellant again stated he stabbed his sister and her girlfriend in apartment 504 at 1515 Hemberger Way. At 8:33 a.m., detectives finally remedied the confusion and confirmed the two women had been stabbed to death inside their apartment. At 9:00 a.m., police gave appellant his *Miranda* warnings and commenced a formal interrogation. From approximately 9:00 a.m. until 1:30 p.m. appellant gave a nine-page signed statement.

On June 11–14 and June 21, 1990, a motion to suppress certain statements of appellant was litigated and subsequently denied. Upon motion by the Commonwealth, all relevant testimony contained in the motion to suppress was incorporated at the nonjury trial. On November 26, 1990, the trial court sentenced appellant and denied his post-trial motions.

Appellant contends the trial court erred in denying his motion to suppress certain oral statements in that they were not voluntary and were not preceded by adequate

*Miranda* warnings. Appellant also argues his nine-page written statement should have been suppressed because it was not obtained within six hours of his arrest as required by *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987).

Our standard of review on appeal from suppression rulings is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Morgan*, 517 Pa. 93, 534 A.2d 1054 (1987); *Commonwealth v. Fromal*, 392 Pa.Super. 100, 572 A.2d 711 (1990).

▆▆▆ Our careful review of the facts leads us to conclude the trial court's factual findings are supported by the record. We agree the trial court was correct in not suppressing statements given by appellant when police arrived on the scene. When the initial statements were made to the officer, appellant was not in custody and thus, no *Miranda* warnings were required. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. Kloch*, 230 Pa.Super. 563, 327 A.2d 375 (1974). The statements made by appellant after he was handcuffed were not a result of custodial interrogation but instead were "blurt outs" and thus were admissible despite the fact *Miranda* warnings were not given. *Commonwealth v. DuVal*, 453 Pa. 205, 307 A.2d 229 (1973). Finally, the questions asked of appellant while he was being transported concerned general identification information and did not require *Miranda* warnings. *Kloch, supra.*

▆▆▆ Next, appellant argues his formal statement should have been suppressed under the six hour rule of *Duncan, supra.* The issue presents a case of first impression in Pennsylvania. We agree with the trial court that although appellant's statement violates *Duncan* on its face, since it was not concluded until 50 minutes after the six hour time limit had expired, the unique circumstances of this case allow us to conclude the statement properly was not suppressed.

In *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), there was an eight hour delay between appellant's arrest and his first admission and a thirteen hour delay between the arrest and arraignment. Our Supreme Court held when an accused is not arraigned within six hours of arrest, any declaration obtained after arrest but before arraignment is not admissible at trial. In *Duncan, supra,* although appellant was not arraigned until eight hours after his arrest, his incriminatory statements were made shortly after arrest. The court modified *Davenport* and ruled "statements not obtained through illegality within the six hour period are not in violation of the rights of the accused and are admissible" even where arraignment is not within six hours of arrest. *Duncan, supra,* 514 Pa. at 408, 525 A.2d at 1183. The court stated the following:

This Court never intended that the rule of *Davenport* be rigidly applied in all situations without regard to the purpose of the rule and the evils sought to be avoided by its application. "At no time did we wish to cut off freely volunteered confessions of guilt, nor did we wish to impede legitimate law enforcement efforts. The primary purpose sought to be obtained [through *Davenport* ] was to discourage the obtaining of incriminatory information through coercive means," and it was felt that the mere passage of time while under arrest could have a coercive effect upon a defendant.

. . . .

In establishing the six hour rule of *Davenport*, we did not abandon the requirement that the incriminating evidence sought to be suppressed by reasonably related to the unnecessary delay, as evidenced by the exigent circumstances exception to the rule.

. . . .

The rule must accommodate conflicting interests and we must make every effort to protect the rights of the accused on one hand, and avoid the mechanical application

of the rule in a manner that works to exclude probative, reliable evidence despite the absence of police abuse. *Id.*, 514 Pa. at 406, 407, 525 A.2d at 1182, 1183 (citations omitted).

Appellant herein was taken into custody around 6:40 a.m., and his voluntary statement was not concluded until 1:30 p.m., or 50 minutes after the six hour time limit. Thus, on its face, appellant's four hour statement arguably violates the six hour rule. The delay in this case, however, was not a result of police coercion and had no impact on appellant's volunteered statement, which began well before the six hour time period had elapsed. The initial confusion of the police relating to the two different homicides occurring at approximately the same time and at the same location provided a reasonable basis for the initial delay in processing the case. Shortly after clarifying the situation, police gave appellant his *Miranda* warnings and proceeded to obtain the formal statement at issue.

The facts in this case are clearly distinguishable from those in *Duncan*. Here, appellant began his formal statement well before the six hours had elapsed and in fact it ran only about 50 minutes over the six hour limit. Additionally, there was virtually no delay between the arrest and appellant's initial confession, which was repeated several times without any hint of coercion or encouragement. If we were to suppress all volunteered statements which happened to run past the six hour limit despite the absence of police abuse, we would be violating the parameters of the *Duncan–Davenport* rule. Therefore, we hold, absent facts pointing to an unnecessary delay due to police misconduct, voluntary statements given by a defendant and initiated within six hours after arrest may not be suppressed just because the process of obtaining the statement runs over six hours. It is unnecessary and mechanistic to apply *Duncan–Davenport* in such a fashion. The coercion and duress which tend to wear down the will of a defendant is a factor related to the extended time of the interrogation and must be attributed to the custody itself. Here, the statement was voluntary and the length of interrogation and

taking the statement were directly attributed to the necessity of identifying the relationship between the victims and the appellant and in corroborating details of the crime between officers on the scene and those obtaining the statement at the station. Since the incriminating statement was fully documented early in the interrogation and the information obtained in the 50 minutes beyond the six hours was mere elaboration, it may not be suppressed. *See Commonwealth v. Hill*, 267 Pa.Super. 264, 406 A.2d 796 (1979) (statement given 14 or 15 hours after arrest, merely elaborative of earlier statements given approximately four hours after arrest, is not suppressible). *Duncan* is not violated merely because a statement, voluntarily given, was signed after six hours, when all essential matters were documented before the time elapsed.

■ Appellant next argues the evidence was insufficient to support the verdict of first degree murder because there was insufficient evidence to show he had the specific intent to kill. Appellant correctly asserts use of a deadly weapon on a vital part of decedent's body does not necessarily establish specific intent to kill. *Commonwealth v. Austin*, 394 Pa.Super. 146, 575 A.2d 141 (1990). In *Austin*, though, the evidence supported the position that Austin's focus was on swinging the knife and not on stabbing the victim. The court applied the following analysis:

> The proper focus for determining the mental component of the crime is how appellant intended to use the knife or what caused the knife to come into contact with a vital area of a human body. A specific intent to kill and malice are properly implied when a deadly weapon is *directed* to a vital part of the body. In other words, what did Austin intend to do with the knife: was it his intention to put the knife into the victim or was it his intention to do something else.

*Id.*, 394 Pa.Superior Ct. at 153, 575 A.2d at 144 (citations omitted).

In this case, the Commonwealth did establish appellant had the specific intent to kill. His statement made to the homicide unit that he used a butcher's knife to make sure

Dolores Jefferson was dead, after repeated stabbings had failed to kill her, makes it absolutely clear it was appellant's intention to kill. The more than 40 stab and incise wounds, at least four of which were potentially fatal, and his statement he went back to stab her some more (after the first knife broke off in her body) because he "wanted to make sure she would die," confirmed specific intent to kill her and was more than adequately supplied by the physical evidence.

Finally, appellant contends at the time of the murders he was suffering from "diminished capacity" due to intoxication from drugs and, therefore, was not able to formulate the specific intent to kill. The defense of intoxication can reduce the level of homicide from first degree to a lesser grade. *Commonwealth v. Rumsey*, 309 Pa.Super. 137, 454 A.2d 1121 (1983). The burden of proof in establishing the "diminished capacity" defense lies with the defendant. *Commonwealth v. Terry*, 513 Pa. 381, 521 A.2d 398 (1987); *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976). Diminished capacity is an extremely limited defense. Evidence is not relevant unless "it speaks to mental disorders affecting cognitive functions [of deliberation and premeditation] necessary to formulate specific intent." *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 28, 454 A.2d 937, 943 (1982), *quoting Commonwealth v. Weinstein*, 499 Pa. 106, 114, 451 A.2d 1344, 1347 (1982).

Appellant failed to satisfy his burden of producing evidence indicative of the lack of premeditative or deliberative capacity because he failed to demonstrate he was intoxicated at the time of the murders. Merely because an officer on the scene testified appellant may have been under the influence of drugs does not prove diminished capacity. The fact appellant asked his friend to call police immediately following the murders and then provided police with a concise statement as to his actions establishes his cognitive functions were intact. Appellant's expert witness was unable to say that at the time of the killings appellant's cognitive functions were so impaired by drugs that he could

not form a specific intent to kill.   The trial judge chose to believe the Commonwealth's expert who testified, to a reasonable degree of medical certainty, appellant was able to form a specific intent to kill.   This opinion is clearly supported by appellant's many purposeful actions throughout the incident and his recollection of those activities.   Therefore, the trial court was correct in rejecting appellant's intoxication defense.

In light of the foregoing discussion, we affirm the trial court's judgment of sentence.

Judgment of sentence affirmed.