J-A15043-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SOLOMON CARTER, | : | |
| | : | |
| Appellant | : | No. 415 EDA 2019 |

Appeal from the PCRA Order Entered January 17, 2019
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000228-2009

BEFORE:   LAZARUS, J., KING, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.:         **FILED:  FEBRUARY 26, 2021**

Solomon Carter (Appellant) *pro se* appeals from the January 17, 2019 order, which dismissed his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. Upon review, we affirm in part and reverse in part, vacate Appellant's judgment of sentence, and remand for resentencing.

Appellant's underlying charges stem from the stabbing of Karima Ballard. On direct appeal, the trial court provided the following factual history, which this Court adopted. ***Commonwealth v. Carter***, 75 A.3d 554 (Pa. Super. 2013) (unpublished memorandum at 1).

> On Sunday, October 8, 2008, at about 3:00 a.m., police responded to a disturbance [on North 16th Street,] and found

---

[*] Retired Senior Judge assigned to the Superior Court.

two victims suffering from stab wounds. One victim, Ballard, was later pronounced dead from the stab wounds.

The day prior to the night of the incident, between 4:00 and 5:00 p.m., Appellant was released from jail and went to see his girlfriend, Ballard, who braided his hair so he would look presentable when seeing his family. The couple did not argue and after having his hair braided, Appellant went to North Philadelphia to see his family.

Appellant returned between 1:00 and 2:00 a.m., later that night[,] angry and agitated and Ballard asked him to leave. Appellant left the residence after Ballard gathered some of his items from the house and put them in a back[]pack. Appellant, however, did not leave the area and remained outside her home ringing the bell and demanding the rest of his belongings. Ballard gathered more of his belongings, and when she went to open the outer door of the house, Appellant entered and threw Ballard across a table and onto a couch.

At this point, Gabrielle Kirben, who was also present in the house, testified that she grabbed one of her children and put him in a back bedroom away from the danger. When she returned, Appellant had dragged Ballard to her bedroom and locked the door, so Kirben went to the kitchen to get a knife and attempted to gain access to the room. She testified that she heard Ballard's speech being muffled, as if she was being prevented from talking or breathing. After being unable to open the door with the knife, Kirben kicked the door open to see Appellant choking Ballard.

Kirben called the police and when Appellant saw her on the phone, he chased after her. A struggle ensued between Kirben and Appellant[,] during which Appellant took the knife from Kirben. Kirben received minor cuts at this time. All three persons eventually ended up in the bathroom where they continued to struggle.

At this time police arrived, and when Appellant saw an officer through a window, Kirben was able to flee the bathroom and escape through the front door, though she received additional lacerations on her arms in the process. Appellant then locked the front door and barricaded himself in the house as police tried to gain entry. One police officer testified that while

looking through the bathroom window she witnessed Appellant stab Ballard at least twice.

Police officers eventually gained entry to the house and a second bathroom where Appellant and Ballard were both found. Another police officer, the first to enter the barricaded bathroom, saw Appellant standing over Ballard with the knife in his hand. He ordered Appellant to drop the knife, which Appellant did[,] after which he threw up his hands.

Appellant was placed under arrest while other officers carried the still[-]alive Ballard to a patrol car and raced her to the hospital. She was alive upon arriving at the hospital, but later died.

Appellant, while in custody approximately two hours after the incident, was heard by officers saying[,] "Is she dead yet? Is she dead yet? Is the fucking bitch dead yet?"

Trial Court Opinion, 2/24/2012, at 2-3 (unnumbered) (party designations altered). Based on the foregoing, Appellant was charged with criminal homicide, attempted murder, aggravated assault, and possessing an instrument of crime (PIC).

Appellant proceeded to a non-jury trial from October 3 to 4, 2011.[1] At the conclusion of the trial, the court found Appellant guilty of first-degree murder, aggravated assault, and PIC, and not guilty of attempted murder. That same day, the trial court sentenced Appellant to the mandatory sentence of life imprisonment without the possibility of parole for his first-degree murder conviction, and an aggregate concurrent sentence of five to ten years of incarceration on the remaining two charges. This Court affirmed

---

[1] A team of two attorneys represented Appellant during trial.

Appellant's judgment of sentence, and on September 9, 2013, our Supreme Court denied Appellant's petition for allowance of appeal. *Carter*, 75 A.3d 554, *appeal denied*, 74 A.3d 1029 (Pa. 2013).

On September 3, 2014, Appellant *pro se* timely filed the instant PCRA petition, raising 14 claims of ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and judicial error. The PCRA court appointed counsel, who subsequently filed a petition to withdraw and *Turner/Finley*[2] no-merit letter on June 6, 2018.[3] On August 20, 2018, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing, pursuant to Pa.R.Crim.P. 907, in light of counsel's *Turner/Finley* letter. On September 11, 2018, Appellant responded, (1) asking for PCRA counsel to remain or in the alternative to be appointed new

---

[2] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

[3] We note our displeasure over the extensive delay of proceedings that occurred in this case. Over six months passed before the PCRA court appointed counsel, and over three years passed between counsel's first letter to Appellant and the filing of the *Turner/Finley* letter. Our Supreme Court has made clear that "[t]he PCRA court [has] the ability and responsibility to manage its docket and caseload and thus has an essential role in ensuring the timely resolution of PCRA matters." *Commonwealth v. Renchenski*, 52 A.3d 251, 260 (Pa. 2012) (citing *Commonwealth v. Porter*, 35 A.3d 4, 24-25 (Pa. 2012) ("[T]he court, not counsel, controls the scope, timing and pace of the proceedings below.")). Additionally, "post-conviction counsel must 'act expeditiously so as to reduce unnecessary delays and ensure the efficient administration of justice.'" *Id.* (citing *Commonwealth v. Sneed*, 45 A.3d 1096, 1104 n.11 (Pa. 2012)).

counsel; (2) addressing the 14 claims raised in his *pro se* petition; and (3) stating that PCRA counsel and appellate counsel had abandoned him.[4] On January 17, 2019, the PCRA court dismissed Appellant's PCRA petition and granted counsel's motion to withdraw.

Appellant *pro se* timely filed a notice of appeal.[5] On appeal, Appellant argues that the PCRA court erred in dismissing nine of his ineffective-assistance-of-counsel claims, and additionally argues that PCRA counsel rendered ineffective assistance of counsel. Appellant's Brief at 5-6. We begin with our standard of review.

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Benner*, 147 A.3d 915, 919 (Pa. Super. 2016) (quoting *Commonwealth v. Perry*, 128 A.3d 1285, 1289 (Pa. Super. 2015)).

> It is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist,

---

[4] Appellant simultaneously filed a complaint against PCRA counsel in order to initiate disciplinary proceedings.

[5] The PCRA court did not order Appellant to file a concise statement, and none was filed. The PCRA court complied with Pa.R.A.P. 1925(a).

then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations, original brackets, and quotations marks omitted). Because all of Appellant's claims assert the ineffective assistance of counsel, we also keep in mind the following.

The law presumes counsel has rendered effective assistance. In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The petitioner bears the burden of proving all three prongs of the test.

*Commonwealth v. Postie*, 200 A.3d 1015, 1022-23 (Pa. Super. 2018) (*en banc*) (citations, footnote, and quotation marks omitted). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

<u>Ineffective Assistance of Trial Counsel: Competency Evaluation</u>

Appellant first argues that the PCRA court erred in dismissing his claim that trial counsel rendered ineffective assistance by not requesting a

competency hearing, and not objecting to the trial court's "basic" colloquy about Appellant's jury trial waiver as being inadequate to assess Appellant's competency to stand trial. Appellant's Brief at 10-13.[6]

We find our Supreme Court's analysis in **Commonwealth v. Rainey**, 928 A.2d 215 (Pa. 2007), instructive.

> Appellant is required to plead and prove by a preponderance of the evidence ... that the conviction or sentence resulted from ... ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. A defendant is presumed to be competent to stand trial. Thus, the burden is on Appellant to prove, by a preponderance of the evidence, that he was incompetent to stand trial. In order to prove that he was incompetent, Appellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense.
>
> [Rainey] does not assert that he was unable to understand the nature of the proceedings against him. **See** 50 P.S. § 7402(a) (a person is incompetent to stand trial when he is "substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense"). Therefore, even if counsel had no reasonable basis to decline to pursue a competency evaluation, [Rainey] fails to articulate how he was prejudiced because he cannot establish that had counsel requested an evaluation and hearing, the outcome of the guilt or sentencing phase would have changed. The 1996 declaration submitted by Dr. Toomer merely concludes that "[g]iven [Rainey]'s deficits and impairments,

---

[6] Insofar as Appellant argues throughout his brief that counsel rendered ineffective assistance by pursuing a diminished capacity defense at trial, that claim is waived for having failed to raise it before the PCRA court. **Commonwealth v. Santiago**, 855 A.2d 682, 691 (Pa. 2004) ("[C]laim[s] not raised in a PCRA petition cannot be raised for the first time on appeal.").

a competency evaluation would have been appropriate at the time of trial proceedings." Declaration of Dr. Toomer at 3. Notably, Dr. Toomer does not claim that the result of a competency evaluation would have demonstrated that [Rainey's] various mental deficiencies prevented him from understanding the proceedings against him. This is insufficient to satisfy [Rainey's] burden to prove that he was, in fact, incompetent to stand trial. We perceive no error in the PCRA court's dismissal of this claim, and decline to find that counsel was ineffective for failing to seek a competency hearing.

*Id.* at 236-37 (some citations and quotation marks omitted).

Here, Appellant cites to counsel's awareness of his mental illness in support of his claim that counsel was ineffective for failing to request a competency hearing. However, "a mental or physical disorder must interfere with one's ability to understand the proceedings or to assist counsel before it is sufficient to constitute incompetency." *Commonwealth v. Hughes*, 555 A.2d 1264, 1271 (Pa. 1989). Appellant does not assert that he was unable to understand the nature of the proceedings against him or assist counsel. Thus, as in *Rainey*, "even if counsel had no reasonable basis to decline to pursue a competency evaluation," Appellant "fails to articulate how he was prejudiced because he cannot establish that had counsel requested an evaluation and hearing, the outcome [] would have changed." 928 A.2d at 236.

The PCRA court dismissed Appellant's claim because "[A]ppellant presented no evidence or support for his claim that his mental illness prevented him from participating in his defense." PCRA Court Opinion, 2/21/2019, at 20. Upon review, the PCRA court's conclusion is supported by

- 8 -

the record and free from legal error. Because Appellant failed to establish prejudice, the PCRA court properly dismissed this claim.

### Ineffective Assistance of Trial Counsel: Plea Negotiation

Appellant next argues that trial counsel rendered ineffective assistance for failing to negotiate a plea of guilty but mentally ill and a sentence of less than life imprisonment. Appellant's Brief at 14-16. Appellant has set forth no proof that (1) there was any plea deal on the table; (2) the Commonwealth would have been willing to negotiate this specific deal; (3) Appellant would have been willing to enter into such a deal; or (4) the trial court would have accepted such a plea. Because the underlying claim lacks merit, the PCRA court did not err in dismissing this claim.

### Ineffective Assistance of Trial Counsel: Testimony Stipulations

Appellant next argues that the PCRA court erred in dismissing his claims that trial counsel was ineffective for stipulating to the testimony of Dr. Gary Collins and Sergeant McCoy, thereby "creating an automatic presumption of guilt" because he was not afforded the opportunity to cross-examine these witnesses. Appellant's Brief at 17-23.

By way of background, the Commonwealth and trial counsel stipulated to the admission of Dr. Collins's autopsy report. Additionally, they stipulated to his proposed testimony as follows.

> [I]f called to testify, Dr. Collins would testify that he did perform the postmortem examination of Karima Ballard, age 32, black female, who was five-foot-one-inch and 113 pounds. That his findings were that she suffered a stab wound to the left neck.

> The entrance was the lateral left neck. The path was the skin subcutaneous tissue and muscle of the left side of the neck. Her isthmus of thyroid, the direction of the injury was rightward, forward and downward at a depth of approximately five to seven centimeters.
>
> He made other findings contained in his report that were associated with hemorrhage into her lateral neck, hemo aspiration and hemorrhage into her posterior mediastinum. She suffered stab wounds to her left ear and abrasions to her extremities, back and abdomen, but that stab wound was the cause of death, and so the manner of death, of course, then was homicide.
>
> ***
>
> Also contained in [the medical examiner's report] were, of course, the toxicology with results of Karima Ballard. Present in her blood was atropine, benzoylglycine, cocaine and ecgonine methyl ester and levamisole.

N.T., 10/3/2011, at 108-09. As to Sergeant McCoy, the Commonwealth and trial counsel stipulated to his testimony as follows, because the Commonwealth believed live testimony would have been redundant to the testimony of Officer Brian Saunders.

> If called to testify, Sergeant McCoy would testify that he pushed the bathroom door open and then the offender pushed the door closed. He attempted to push the door open again and got it partially open and he observed the offender on top of the victim with a knife in his hand. It was a silver kitchen knife about six to eight inches long.
>
> ***
>
> He would also testify he instructed the offender to drop the knife at which point he did and then threw his hand up.

*Id.* at 106-07.

- 10 -

According to Appellant, the stipulations permitted the Commonwealth to make unqualified medical interpretations and conflicted with the testimony of Officer Brian Saunders regarding his giving of chest compressions to Ballard while she was breathing. Appellant's Brief at 19-21. As such, he argues he was denied a fair trial by counsel's abdication of the opportunity to cross-examine Dr. Collins and Sergeant McCoy on these issues. *Id.* at 21-23.

In dismissing the claims regarding Dr. Collins, the PCRA court explained as follows.

> Here, it is clear [] that trial counsel's decision [] to agree to the introduction of the autopsy report and the testimony of Dr. Collins by way of stipulation without first consulting with Appellant was a decision fitting within those matters which counsel may decide without consulting his client. This is especially so because the reports contained no exculpatory information that could have been elicited by cross-examination and there is no dispute as to the accuracy of the information contained therein.
>
> Moreover, even if there were vigorous attempts to revive the victim, [] intervening events do not excuse [a defendant's] criminal acts when a defendant's acts were the direct cause of the intervening event. Thus, Appellant cannot escape liability because his act started an unbroken chain of causation leading to the death of the victim, even if the subsequent event was the immediate cause of her death.
>
> ***
>
> Instantly, the admission of the autopsy report did not make the outcome a foregone conclusion.

PCRA Court Opinion, 2/21/2019, at 8-9, 11 (capitalization altered; citations omitted).

As to Sergeant McCoy,

Appellant argued that trial counsel should not have stipulated to the testimony because Sergeant McCoy was the senior officer at the scene and thus, according to Appellant, had more experience in observing highly charged situations as in the instant case. Appellant further asserts that because the sergeant was the first law enforcement officer to arrive at the scene, he was in a position to explain the nature of the sounds the other officers heard coming from the bathroom.

Th[e PCRA] court deemed that this claim lacked merit primarily because Appellant failed to establish that counsel's actions in stipulating to the sergeant's testimony prejudiced him. This is so because the evidence of Appellant's guilt was overwhelming. Witnesses saw him assaulting the victim and a police officer observed him stab the victim. Moreover, the stipulation merely reiterated other testimony presented by the Commonwealth. …

*Id.* at 11-12 (capitalization altered; citations and quotation marks omitted).

Upon review, we hold that the PCRA court's conclusions are supported by the record and free from legal error. Because the underlying claims lack merit and Appellant failed to establish prejudice, the PCRA court properly dismissed these claims.

Ineffective Assistance of Trial Counsel: Perjury

Appellant next argues that the PCRA court erred in dismissing his claim that trial counsel rendered ineffective assistance by committing perjury. Specifically, Appellant avers that trial counsel told the trial court that Chris Crawford, a witness Appellant desired to call, did not appear for trial. Appellant's Brief at 24, 27. According to Appellant, Crawford was present at trial because he had "signed in." *Pro se* PCRA Petition, 9/3/2014, at 3a-2.

"A person is guilty of perjury[] if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true." 18 Pa.C.S. § 4902(a). Because trial counsel was not under oath or affirmation, she cannot be guilty of perjury, even if she did not believe her statement about Crawford's presence to be true. Thus, Appellant's underlying claim lacks merit, and the PCRA court properly dismissed this claim of ineffective assistance of counsel.[7]

### Ineffective Assistance of Trial Counsel: Cross-Examination

Appellant next argues that the PCRA court erred in dismissing his claim that trial counsel rendered ineffective assistance of counsel for failing to cross-examine adequately Officer Linda Smith regarding her stating for the first time at trial that she witnessed Appellant stab Ballard. Appellant's Brief at 28.[8]

In dismissing this claim, the PCRA court explained as follows.

Relief was denied with respect to this issue because a review of the record indicates that Appellant failed to prove that counsels' alleged error prejudiced him. The evidence of guilt in this case

---

[7] Because Appellant only argues that counsel perjured herself, not that she was ineffective for failing to call Crawford, we do not review Appellant's claim under that standard.

[8] Within his brief, Appellant also assails counsel's cross-examination of Officer Saunders, as well as counsel's failure to present Appellant's alternate theory of events. Appellant failed to present these claims to the PCRA court, and therefore they are waived. **Santiago**, 855 A.2d at 691.

was overwhelming and Appellant would have been found guilty of the crimes herein even had counsel presented evidence establishing that the officer never told anyone prior to the day she testified in this case that she witnessed Appellant stab the victim. The facts show that Appellant was caught in the act of killing the victim and the officer's testimony was only one part of a web of evidence implicating Appellant in the crime.

PCRA Court Opinion, 2/21/2019, at 14 (capitalization altered).

Our review of the record indicates that counsel questioned Officer Smith regarding her failure to include her observations in her initial police report or in any subsequent report or interview. N.T., 10/3/2011, at 42, 44. Although brief, counsel's cross-examination was pointed and effective, particularly as to Officer Smith's stated observations of Appellant's stabbing Ballard and her failure to report that prior to trial. Because the underlying claim lacks merit Appellant failed to prove prejudice, we hold that the PCRA court's conclusions are supported by the record and free from legal error. Thus, the PCRA court properly dismissed this claim.

Ineffective Assistance of Trial Counsel: Kirben's Testimony

Appellant next argues that the PCRA court erred in dismissing his claim that counsel was ineffective for failing to object to Kirben's testimony regarding her injuries, which he claims were unsupported by her medical

records and therefore objectionable. Appellant's Brief at 33-34.[9] In dismissing this claim, the PCRA court explained as follows.

> A review of the record indicates that Kirben testified that she suffered a few cuts, one of which was to her hand, which was inflicted during a struggle with Appellant for the knife she retrieved from the kitchen[,] and another she suffered to her arm when she ran by Appellant and he chased her to the front door. Kirben added that during the incident[,] Appellant was saying that he was[] "tired of us bitches, and basically that everything was going to stop today[,]" and that he was going to get Kirben and her children because she was "nosey."

> Relief was denied with respect to this claim because Appellant failed to prove that Kirben's hospital records contradicted her in-court testimony. Kirben did not exaggerate the severity of her injuries when she testified and Appellant did not include Kirben's medicals records or cite to them in his *pro se* PCRA petition. Therefore, the PCRA court lacked a basis to grant him relief.

> In any event, the PCRA court would have denied Appellant relief on this claim even had there been a discrepancy in the medical records because it was clear to the court that Appellant acted with the intent to cause Kirben serious bodily injury, and thus, was guilty of the crime of aggravated assault as a felony of the first degree. …

> Instantly, Appellant not only threatened Kirben, he then cut her with the knife as she fled from him and then he chased her to the door. His actions, coupled with his threats, established that he acted with the intent necessary to convict him of aggravated assault. Thus, even had Kirben's medical records shown that her injuries were less serious than she said, the PCRA court would have still convicted Appellant of committing aggravated assault.

---

[9] Again, Appellant raises a claim on appeal that was not presented to the PCRA court. **See** Appellant's Brief at 35 (arguing counsel rendered ineffective assistance by failing to investigate and present Kirben's medical records). Accordingly, this claim is waived. **Santiago**, 855 A.2d at 691.

PCRA Court Opinion, 2/21/2019, at 15-16 (party designations altered; citations omitted).

Upon review, we hold that the PCRA court's conclusion that Appellant failed to establish prejudice is supported by the record and free from legal error. Thus, the PCRA court properly dismissed this claim.

Ineffective Assistance of Trial Counsel: *Miranda*[10]

Appellant next argues that the PCRA court erred in dismissing his claim that trial counsel rendered ineffective assistance by failing to object to evidence obtained in violation of *Miranda*. Appellant's Brief at 37. Specifically, Appellant references the admission of his statement regarding whether Ballard was dead yet. *Id.* at 38.

> Our Supreme Court has explained *Miranda* protections as follows.
>
> To protect an individual's Fifth Amendment privilege against self-incrimination, the United States Supreme Court has held that, before an individual in police custody may be interrogated, he must first be informed, in clear and unequivocal terms, that he has the right to remain silent, that anything he says can and will be used against him in court, and that he has the right to consult with counsel and to have counsel present during interrogation, and, if he is indigent, counsel will be appointed for him.

*Commonwealth v. Frein*, 206 A.3d 1049, 1064 (Pa. 2019) (footnote omitted) (citing *Miranda*, 384 U.S. at 467-69). Thus, a "statement made by a criminal defendant during a custodial interrogation who has not been apprised of the warnings required by *Miranda*, generally must be

---

[10] *Miranda v. Arizona*, 384 U.S. 436 (1966).

suppressed." ***Commonwealth v. Bishop***, 217 A.3d 833, 835-36 (Pa. 2019).

In dismissing Appellant's claim, the PCRA court offered a two-fold analysis. First, the PCRA court denied relief because Appellant's claim was undeveloped. PCRA Court Opinion, 2/21/2019, at 17-18.

> Second, the claim was deemed to lack merit because Appellant did not undergo custodial interrogation. ***Miranda*** warnings are only required prior to custodial interrogation. Although a remark Appellant made was admitted into evidence, that remark was admissible in the absence of ***Miranda*** warnings because it was volunteered and not induced by authorities. Thus, Appellant's volunteered statements need not have been preceded by ***Miranda*** warnings to be admissible.

***Id.*** at 18 (capitalization altered; citations omitted).

Upon review, we hold that the record supports the PCRA court's conclusions and they are free from legal error. Because Appellant's spontaneous statement was not the product of an interrogation subject to ***Miranda***, counsel cannot be deemed ineffective for failing to object on ***Miranda*** grounds. ***See Commonwealth v. Odrick***, 599 A.2d 974, 976 (Pa. Super. 1991) (holding that "statements made by [Odrick] after he was handcuffed were not a result of custodial interrogation but instead were 'blurt outs' and thus were admissible despite the fact ***Miranda*** warnings were not given"). Accordingly, the PCRA court properly dismissed this claim.

Ineffective Assistance of Trial Counsel: Commonwealth's Closing Argument

Appellant next argues that the PCRA court erred in dismissing his claim of ineffective assistance of trial counsel for failing to object to prejudicial

statements made during the Commonwealth's closing arguments regarding an alleged motive, which Appellant contends was not supported by the evidence. Appellant's Brief at 40. Specifically, Appellant claims the prosecutor's statements regarding Appellant's motive, the size of the incision on Ballard's neck, and the nature of the wounds to Kirben were "falsified accounts of evidence, utilized to inflame the passions of the judicial officer[.]" *Id.* at 41-42.

Regarding prosecutorial misconduct in a bench trial, our Supreme Court has held as follows.

> [W]e will not **assume** that a verdict rendered by a jurist was influenced by [] extraneous prejudicial remarks and comments, rather it must be demonstrated by the record that the verdict was indeed the product of that corrupt source. Where [] the weight of the competent evidence, much of it uncontroverted, clearly supports the verdict there can be no legitimate basis for assuming that it was tainted by the prosecutorial misconduct.

*Commonwealth v. Harvey*, 526 A.2d 330, 333 (Pa. 1987) (emphasis in original).

In dismissing this claim, the PCRA court explained as follows.

> Relief was properly denied with respect to this claim because th[e trial] court was aware of the evidence and was not influenced or swayed by the comments [Appellant] complains of in his *pro se* PCRA petition. When the trial court sits as the factfinder, the presumption in the law is that the court will be able to ignore prejudicial information in reaching its verdict.
>
> Here, th[e trial] court did just that and ignored any alleged improprieties by the prosecutor. Therefore, counsel's failure to object to the prosecutor's [] comments caused him no prejudice[.]

- 18 -

PCRA Court Opinion, 2/21/2019, at 18-19 (capitalization altered; citations omitted).

Given the ample evidence in this case, Appellant has failed to demonstrate that the verdict was based on the prosecutor's comments instead of the evidence presented. Thus, the PCRA court did not err in dismissing this claim.

Ineffective Assistance of PCRA Counsel

Appellant next argues that PCRA counsel rendered ineffective assistance by failing to raise a claim that direct appeal counsel rendered ineffective assistance in failing to challenge the weight and sufficiency of the evidence. Appellant's Brief at 47.

> [A]bsent recognition of a constitutional right to effective collateral review counsel, claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter." *Commonwealth v. Ford*, 44 A.3d 1190, 1201 (Pa. Super. 2012). A petitioner's failure to raise an ineffectiveness of counsel claim after receiving Rule 907 notice results in waiver of the claim. *Commonwealth v. Pitts*, 981 A.2d 875, 880 n. 4 (Pa. 2009).

*Commonwealth v. Smith*, 121 A.3d 1049, 1054 (Pa. Super. 2015)

In the instant case, Appellant filed a response to the PCRA court's Rule 907 notice. However, he did not raise a claim of ineffective assistance of PCRA counsel therein. Although Appellant asserted in his response that PCRA counsel has ignored and abandoned him, Appellant did not claim that PCRA counsel rendered ineffective assistance by failing to assert direct appeal counsel's ineffectiveness. "In the framework of Rule 907 notice, the law

- 19 -

makes clear Appellant had to preserve his claims of PCRA counsel's ineffectiveness in a response to the notice." **Smith**, 121 A.3d at 1056 (citations omitted). Accordingly, this claim is waived.

<u>Ineffective Assistance of Trial Counsel: Victim Impact</u>

Finally, we review whether the PCRA court erred in dismissing Appellant's claim that trial counsel rendered ineffective assistance for failing to object to victim impact testimony by Officer Ryan Saunders. Appellant's Brief at 44-45. We consider this claim mindful of the following.

"The admissibility of evidence, including victim impact evidence, rests with the sound discretion of the trial court." **Commonwealth v. King**, 182 A.3d 449, 455 (Pa. Super. 2018) (citation and quotation marks omitted).

> The purpose of a victim impact statement is to allow victims of crime to inform the court of how the crime impacted their lives. In 1998, our General Assembly promulgated a Bill of Rights for crime victims which provides them the right:
>
>> "to have opportunity to offer prior comment on the sentencing of a defendant... to include the submission of a written and oral victim impact statement detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. The written statement shall be included in any predisposition or presentence report submitted to the court. Victim-impact statements shall be considered by a court when determining the... sentence of an adult."
>
> 18 P.S. § 11.201(5) [].
>
> The Supreme Court of the United States stated that the purpose of victim impact evidence is to show the victim's uniqueness as a human being and to illustrate that a particular individual's loss has a distinct effect on society. **Payne v. Tennessee**, 501 U.S.

808, 824 (1991), Similarly, in Pennsylvania, this Court has emphasized that crime victims in the Commonwealth have the "right to breathe life with all its emotion into their victim impact statements." ***Commonwealth v. Penrod***, 578 A.2d 486, 491 (Pa. Super. 1989). In other words, the purpose of victim impact statements is to personalize the crime and to illustrate the human effects of it. ***Id.***

The text of [subs]ection 11.201(5) explicitly identifies three types of information or evidence that the speaker may attest to which are: (1) the defendant's sentencing, (2) the physical, psychological and economic effects on the victim and (3) the victim's family. Additionally, the sentencing court must consider "the gravity of the offense as it relates to the impact on the life of the victim and on the community." 42 Pa.C.S. § 9721 []. Hence, the court should consider the information set forth by the victim concerning the sentencing, the impact of the crime on himself or his family, and finally the impact the offense had on the community.

***Id.*** (citation format altered). The Crime Victims Act defines "victim" to include the following individuals.

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

      Chapter 25 (relating to criminal homicide).

      Section 2702 (relating to aggravated assault).

      Section 3121 (relating to rape).

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiance, one of whom is to be identified to receive communication as provided

for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103.

By way of background, Officer Saunders testified as a fact witness during Appellant's bench trial as one of the officers who responded to the scene and transported Ballard to the hospital. Following the court's rendering of its verdict, Officer Saunders testified at Appellant's sentencing hearing, as follows.

> ASSISTANT DISTRICT ATTORNEY [(ADA)]: I do have victim impact, Your Honor, if you will entertain it.
>
> THE COURT: Yes.
>
> [ADA]: Thank you. I would first call Officer Ryan Saunders to the stand.
>
> ***
>
> [ADA]: Officer Saunders, this is your opportunity to tell [the trial court] how this crime impacted you. Would you like to take that opportunity?
>
> THE WITNESS: Yes, Ma'am.
>
> [ADA]: Go ahead.
>
> THE WITNESS: Your Honor, this crime impacted me in a way that's not really normal. I've been a police officer going on eight years now. I've seen a lot of bad things, but in relation to them it was something I never seen or experienced before in my life. It got to a point after this crime that my sergeant at the time[] had to place me into counselling due to the fact of the vision of the crime scene and the consistent picture of the victim, her last breath, and knowing that she was killed in such a horrific way that her last breath wasn't by bedside with her family, it wasn't at home with her family, it wasn't really even in a hospital. It was in the back seat of a police car, and she died in my arms,

and that affected me in such a way that I had to seek counselling. I had to seek counselling. Couldn't gather my notes for about two or three weeks, and I actually had to be, you know, my sergeant helped me. I had to be taken off the street. I had to be kind of brought back to a level to the point of being taught how I learned in my studies as far as going to the police academy of not taking the job home with me, and in this particular incident it wasn't such the case.

N.T., 10/4/2011, at 40-42. The court then heard victim impact testimony from Ballard's family members and Kirben, as well as statements from Appellant and his mother. Following this, the court told Appellant that, "[q]uite frankly, in the number of homicides I've heard over six years, I've never seen police officers affected so intensely." *Id.* at 53.

In his *pro se* PCRA petition, Appellant claimed that the trial court erred in allowing Officer Saunders to offer victim impact testimony when he was not a victim, and that the record showed the testimony "affected the [c]ourt's decision." *Pro se* PCRA Petition, 9/3/2014, at 3a-6. Counsel agreed with Appellant that the trial court should not have permitted Officer Saunders to offer victim impact testimony, but concluded that Appellant was not prejudiced because Appellant was sentenced to concurrent terms of incarceration for the crimes of aggravated assault and PIC. *Turner/Finley* Letter, 6/6/2018, at 15. The PCRA court dismissed Appellant's claim "because Officer Saunders was a fact witness and not a victim[ ]impact witness. He did not give victim impact testimony. The fact that while testifying he appeared to have been affected by what he saw was not victim impact testimony[]." PCRA Court Opinion, 2/21/2019, at 21.

Contrary to the PCRA court's conclusion, it is evident from the record that Officer Saunders was offered and accepted as a victim impact witness during Appellant's sentencing hearing. **See** N.T., 10/4/2011, at 40-42. Unquestionably, Officer Saunders did not qualify as a victim in this case. Therefore, we hold that the trial court erred in allowing Officer Saunders to offer victim impact testimony at Appellant's sentencing hearing. Additionally, the record indicates that the trial court considered this testimony prior to imposing Appellant's sentence. **See id.** at 53. Although Appellant received a mandatory sentence of life imprisonment without parole for his first-degree murder conviction, we cannot conclude based on the record before us that the improper victim impact testimony did not affect Appellant's concurrent sentences for aggravated assault and PIC. Specifically, the record is devoid of Appellant's sentencing guidelines, so we do not know the range into which these sentences fall. Moreover, it was only after imposing Appellant's sentence that the trial court inquired about Appellant's prior record score, to which the ADA responded, "I think he's a three or a two." **Id.** at 55-56. Under these circumstances, we conclude that the PCRA court erred in dismissing this claim, and Appellant is entitled to a new sentencing hearing.

Having concluded that the PCRA court erred in dismissing Appellant's victim-impact-testimony claim, we reverse only that part of the PCRA court's order, vacate Appellant's judgment of sentence, and remand for

resentencing. As to Appellant's remaining claims, we affirm the PCRA court's order.

Order affirmed in part and reversed in part. Judgment of sentence vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge King concurs in the result.

Judge Lazarus notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/21